FRED BUTLER, and another, Petitioners for *Habeas Corpus,*
vs.
GEORGE H. WENTWORTH.

York.    Announced July 30, 1891, Law Term, Western District.    Opinion November 10, 1891.

*Constitutional Law.    Infamous crime.    Indictment.    Art. I, § 7, Const. of Maine.    Stat. 1891, c. 132.*

Article I, sec. 7, of the Constitution of Maine, provides that "no person shall be held to answer for a capital or infamous crime, unless on a presentment or indictment of a grand jury, except in cases of impeachment, or in such cases of offences as are usually cognizable by a justice-of the peace."

The legislature, by public statute of 1891, c. 132, for the offense with which the petitioners were charged, imposed a penalty of five hundred dollars and costs, and in addition thereto imprisonment for one year, and in default of payment of such fine and costs, one year's additional imprisonment.

The act of the legislature in thus increasing the penalty, and rendering imperative a sentence of imprisonment for a term of not less than one year, has rendered the crime infamous within the meaning of the Constitution, and as such, no person can lawfully be held to answer for the same except upon a presentment or indictment of a grand jury.

A trial justice or municipal judge has no original jurisdiction in such cases and can only hold to bail.

ON REPORT.

This was a petition for *Habeas Corpus* presented to HASKELL, J., in chambers at Portland, who ordered notice to the County Attorney of York county, returnable before him at chambers in Portland, July 11, 1891, when and where the parties by their respective counsel appeared.

The case was docketed in Cumberland county under the act of 1887, c. 16, and upon hearing the following facts appeared.

Defendants were brought before a trial justice in York county upon a complaint for the illegal transportation of intoxicating liquors in that county in violation of the act of 1891, c. 132, sec. 2, amending sec. 31, c. 27 of R. S., and upon their arraignment pleaded not guilty, but the magistrate after hearing the evidence considered that they were guilty and sentenced each of them to "pay a fine to the use of the State of $500, and costs of prosecution taxed at $13.32, and confinement at our common jail in Alfred in said county for the term of one year from date, and in default of payment of said fine and cost an additional term of one year each, and to stand committed," &c.

Defendants were committed in execution of their sentence on the same day that it was imposed, to wit, June 22, 1891, to Alfred jail, which is not a work jail. Defendants claimed a release from their imprisonment upon two grounds : (1,) Because there is no law authorizing their commitment by a trial justice to Alfred jail, it not being a work jail. (2,) Because the Constitution of Maine, Art. I, § 7 and the Constitution of United States, Arts. V and XIV of the amendments thereto, prohibit the prosecution and imprisonment of defendants on the charge above named by any other procedure than by "indictment of a grand jury," inasmuch as the above named offense was made an infamous crime by the act aforesaid of 1891, c. 132, § 2.

The presiding justice considering the questions raised of sufficient importance to warrant the procedure, the parties agreeing thereto, reported the case to the Law Court for its consideration, in order that a final construction of the act of 1891 may be had.

*Geo. F. Haley, P. Z. Prince,* with him, for petitioners.

*Charles E. Littlefield,* Attorney General.

*Walter P. Perkins,* County Attorney, for respondent.

(1.) The question to be considered is how shall sec. 2, of c. 132, of the laws of 1891, be construed? By section 51, c. 27, of the R. S., of Maine, trial justices have original and concurrent jurisdiction with the Supreme Judicial and Superior Courts of said sec. 2, c. 132. The legislature of 1891 must have intended that the imprisonment provided for in said section should be executed in the common jail. This section should be construed as falling under the "unless otherwise specially provided," of sec. 2, c. 135, R. S., of Maine.

(2.) An infamous crime is one which works infamy in the one who has committed it. Am. and Eng. Enc. No. 10, p. 605, and note 1; Bouv. Law Dic.

(3.) It is the nature and purpose of the crime and not the punishment inflicted which makes it infamous. *The People* v. *Whipple,* 9 Cow. 708; Am. and Eng. Enc. No. 10, p. 604, and notes; 1 Phillips Evidence, 7th ed. 30; *Com.* v. *Shaver,* 3 W. & S. (Penn.) 342–343; *Lawson* v. *The Ohio and Penn. R. R. Co.* 1 Grant, 331; *Schuykill Co.* v. *Copley,* 67 Penn. 390; 1 Greenl. Ev. § 372, note 1, and § 373; *Bickel's Ex'rs,* v. *Fasig's Adm'r,* 33 Penn. 465; *Utley* v. *Merrick,* 11 Met. 303; *Com.* v. *Dame,* 8 Cush. 384; 1 Bish. on Crim. Law. § 974; *Little* v. *Gibson,* 39 N. H. 510; *State* v. *Keyes,* 8 Vt. 64; *State* v. *Randolph,* 24 Conn. 364; *U. S.* v. *Baugh,* 1 Fed. Rep. 784–7; *U. S.* v. *Yates,* 6 Fed. *Rep.* 865–6; *U. S.* v. *Block,* 4 Sawyer, 216; *U. S.* v. *Maxwell,* 3 Dill. 275.

(4.) The prohibitions contained in the amendments to the Constitution of the United States were intended to be restrictions upon the federal government and not upon the authority of the states. *Fox* v. *Ohio,* 5 How. 410; *Withers* v. *Buckley,* 20 How. 84; *Jones* v. *Robbins,* 8 Gray, 345; *Twitchell* v. *The Commonwealth,* 7 Wallace, 326; *State* v. *Keyes,* 8 Vt. 57.

(5.) Under our law the fact that an offense is a statute felony does not make it an infamous crime. Felony at common law was an offense which occasioned a total forfeiture of either lands

or goods, or both, to which capital or other punishment may be superadded. Bouv. Law Dict. ; *U. S.* v. *Coppersmith,* 4 Fed. Rep. 204. Treason, felony and all comprised under *crimen falsi* were infamous crimes. The felony here meant is the common law felony.

Foster, J.   The petitioners were arrested and brought before a trial justice in the county of York, upon a complaint for the illegal transportation of intoxicating liquors in violation of § 31, c. 27, R. S., as amended by the act of 1891, c. 132, § 2, and each sentenced to pay a fine of $500, and costs of prosecution, and to confinement in the county jail for the term of one year, and in default of payment of fine and costs, to an additional term of imprisonment one year each. The sentence by virtue of which the petitioners were committed, was in accordance with the provisions of the statute as thus amended ; and the question presented by this process, is, whether the magistrate had original jurisdiction of the offense and could lawfully impose sentence in these cases.

By R. S., c. 27, § 51, it is provided that prosecutions for manufacturing liquors in violation of law, for keeping drinking houses and tippling shops, and for being common sellers of intoxicating liquors, shall be by indictment ; but in all other prosecutions under that chapter judges of municipal and police courts and trial justices have by complaint original and concurrent jurisdiction with the Supreme Judicial and Superior courts.

But the petitioners contend that the offense with which they were charged and upon which they were convicted and sentenced, was an "infamous crime," and that legally no conviction could be had or sentence imposed, except upon an indictment, or presentment of a grand jury.

Article I, section 7, of the Constitution of Maine, provides that "no person shall be held to answer for a capital or infamous crime, unless on a presentment or indictment of a grand jury, except in cases of impeachment, or in such cases of offences as are usually cognizable by a justice of the peace," etc.   A corres-

ponding provision exists in the United States Constitution, which prohibits prosecution for "a capital or otherwise infamous crime" unless upon a presentment or an indictment of a grand jury.

The investigation by a grand jury of "a capital or infamous crime" of which a party may be accused, has been regarded for centuries, as one of the securities to the innocent against hasty, malicious and oppressive public prosecutions, and as one of the ancient immunities and bulwarks of personal liberty. The provision now found in the Federal Constitution originated as an amendment to the original Constitution, introduced in the nature of a bill of rights, at the first session of Congress in 1789, the more carefully to guard the security of the citizen against vindictive prosecutions, either by the government, political partisans, or by private enemies. Judge Story, in his work on the Constitution, says: "But though this provision of a trial by jury in criminal cases is thus constitutionally preserved to all citizens, the jealousies and alarms of the opponents of the constitution were not quieted. They insisted that a bill of rights was indispensable upon other subjects, and that upon this further auxiliary rights ought to have been secured. These objections found their way into the state conventions, and were urged with great zeal against the constitution. They did not, however, prevent the adoption of that instrument, but they produced such a strong effect upon the public mind that Congress, immediately after their first meeting, proposed certain amendments, embracing all the suggestions which appeared of most force; and the amendments were ratified by the several states, and are now become a part of the constitution." § 1782.

If, therefore, the offense of illegally transporting intoxicating liquors from place to place in this State, and for which the legislature has imposed a penalty of five hundred dollars fine and one year's imprisonment, is to be regarded as an "infamous crime," within the meaning of our Constitution, then the magistrate had no original jurisdiction, and the sentence thus imposed would be null and void. *Jones* v. *Robbins*, 8 Gray, 329. In that case the court held that a statute which purported to give

to a magistrate, or inferior tribunal, authority to try an offense punishable by imprisonment in the state prison, without presentment by a grand jury, was in violation of the Massachusetts declaration of rights, which prohibits the enactment of any law that shall subject any person to a "capital or infamous punishment," excepting for the government of the army or navy, without trial by jury.

An infamous crime is that which works infamy in the person who has committed it. And the law writers inform us that by the principles of the common law, the person thus rendered infamous by the conviction of such crime, was incompetent as a witness. The law considered his oath to be of no weight, and excluded his testimony as of too doubtful and suspicious a nature to be admitted in court to deprive another of life, liberty or property.

For a long time prior to the Declaration of Independence, and before the adoption of the Federal Constitution, there were, as then understood, two kinds of infamy,—the one based upon the opinion of the people respecting the mode of punishment, and the other in relation to the future credibility of the culprit. Eden's Principles of Penal Law, c. 7, § 5.

As the law was then administered it was considered that the infamy which disqualified the criminal from testifying, depended upon the character of his crime, and not upon the nature of the punishment inflicted. 1 Phill. Ev. 25 ; 2 Hawk. c. 46, § 102. *Pendock* v. *McKinder*, Willes, 665. So, in many of the earlier decisions where this question has been considered, it will be found that the courts inclined to the doctrine that it is the nature of the crime, and not the punishment inflicted, which renders it infamous. Bouv. Law Dic. Infamy. *People* v. *Whipple*, 9 Cowen, 708 ; *Com.* v. *Shaver*, 3 W. & S. (Penn.) 342 ; *Com.* v. *Dame*, 8 Cush. 384 ; *State* v. *Keyes*, 8 Vt. 64 ; *Little* v. *Gibson*, 39 N. H. 505. Thus at common law, the crimes which rendered persons incompetent were treason, felony, forgery, and any offense tending to pervert the administration of justice by falsehood and fraud, and which come within the general scope of the *crimen falsi* of the Roman law, such as perjury,

subornation of perjury, barratry, conspiracy, swindling, cheating and other crimes of a kindred nature. Co. Litt. 6; Fost. 209; 2 Rolle Abr. 886; 1 Gr. Ev. § 373; Whar. Cr. Law, § 758.

But it will be found that incompetency as a witness is not the only or proper test in the application of the term "infamous crime" to the provision of the Constitution. A mere reference to the history and adoption of this provision into the federal Constitution is sufficient to show that it was not a question of competency or incompetency to testify that the framers of our government were considering, but rather the consequences to the liberty of the individual in securing him against accusation and trial for crimes of great magnitude without the previous interposition of a grand jury.

If the nature of the crime as understood at common law, rather than the punishment inflicted, were to govern in determining whether it was infamous or not, within the meaning of the provision of the Constitution, many offenses might be held not to be infamous crimes and requiring no indictment for their prosecution. This doctrine at one time obtained considerable foothold in the federal courts. Thus the offense of stealing or embezzling from the mails (*United States* v. *Wynn*, 9 Fed. Rep. 886), passing counterfeit money (*United States* v. *Yates*, 6 Fed. Rep. 861), embezzlement as defined by the federal statutes (*United States* v. *Reilley*, 20 Fed. Rep. 46), wilfully and fraudulently omitting assets of a bankrupt from the inventory of his estate (*United States* v. *Black*, 4 Sawyer [C. C.] 211), were held not to be infamous crimes, and that no indictment was necessary for their prosecution.

But this doctrine has since been expressly disapproved by the Supreme Court of the United States, where it has been decided that any crime which is punishable by imprisonment for a term of years is an infamous crime, and cannot be prosecuted except upon indictment or presentment by a grand jury; thus repudiating the doctrine enunciated in some of the earlier decisions not only of the State, but also of the federal, courts, that the question whether the crime is infamous is to be determined solely and entirely from the nature of the act, and in

total disregard of the punishment inflicted. *Ex parte Wilson*, 114 U. S. 417 ; *Mackin* v. *United States*, 117 U. S. 348 ; *Parkinson* v. *United States*, 121 U. S. 281 ; *Ex parte Bain*, 121 U. S. 1, 13 ; *United States* v. *De Walt*, 128 U. S. 393 ; *Medley, Petitioner*, 134 U. S. 160, 169 ; *In re Mills*, 135 U. S. 263, 267 ; *In re Claasen*, 140 U. S. 200, 205 ; *Jones* v. *Robbins*, 8 Gray, 329.

In *Ex parte Wilson, supra*, where this question was considered in a very elaborate opinion by Mr. Justice Gray, the court say : "That no person can be held to answer, without presentment or indictment by a grand jury, for any crime for which an infamous punishment may be imposed by the court. The question is whether the crime is one for which the statutes authorize the court to award an infamous punishment, not whether the punishment ultimately awarded is an infamous one. Where the accused is in danger of being subjected to an infamous punishment if convicted, he has the right to insist that he shall not be put upon his trial, except on the accusation of a grand jury."

In *Mackin* v. *United States, supra*, the court said : "We cannot doubt that at the present day imprisonment in a state prison or penitentiary, with or without hard labor, is an infamous punishment. It is not only so considered in the general opinion of the people, but it has been recognized as such in the legislation of the states and territories, as well as of congress."

And the purport of all the decisions from the highest court in this country since *Ex parte Wilson, supra*, is, that a crime punishable by imprisonment in the state prison or penitentiary, whether the accused is or is not sentenced to hard labor, is an infamous crime ; and in determining this, the question is, whether it is one for which the statute authorizes the court to award an infamous punishment, and not whether the punishment actually imposed is an infamous one. *In re Claasen, supra.*

The statute under which these petitioners were tried, convicted and sentenced, in addition to a fine of five hundred dollars and costs for each offense, rendered imperative a sentence of imprisonment for a term of not less than one year. It is

silent in respect to the place where such imprisonment is to be executed. But by R. S., c. 135, § 3, "unless otherwise specially provided, all imprisonments for one year or more shall be in the state prison," although, by another provision in the following section, where punishment provided by law may be imprisonment in the state prison for three years or less, such punishment may be inflicted by the court in its discretion, in either of the work jails.

It is not as a general rule whether the court in its discretion awards a punishment that is infamous or otherwise, but whether the statute authorizes the infliction of such infamous punishment, that is the criterion by which we must determine whether the offense charged against the petitioners constitutes an infamous crime.

We have no doubt that the statute which has authorized the court to inflict a punishment for a term of not less than one year, has thereby rendered the crime infamous for which such sentence may be imposed, within the meaning of the Constitution, and as such no person can lawfully be held to answer for the same except upon a presentment or indictment of a grand jury.

*Writ of Habeas Corpus to issue.*

PETERS, C. J., WALTON, VIRGIN, EMERY and HASKELL, JJ., concurred.