PEOPLE v DRAINE

1. WITNESSES—CRIMINAL LAW—IMPEACHMENT—PROSECUTORS—ORDINANCE CONVICTIONS—MISDEMEANOR CONVICTIONS.

The use of municipal ordinance or misdemeanor convictions by the prosecution solely for impeachment purposes is prohibited.

2. APPEAL AND ERROR—SUPREME COURT—DATE OF DECISION—EFFECTIVE DATE.

The decisional date to be used for a case decided by the Michigan Supreme Court is the date stamped on the slip opinion when the opinion is filed in the office of the Supreme Court Clerk and which is carried forward into the permanent copy of the Michigan Reports as the date on which the case was decided.

3. CRIMINAL LAW—CASE PRECEDENT—EFFECTIVE DATE—IMPEACHMENT —DATE OF DECISION.

A decision by the Supreme Court prohibiting the use of municipal ordinance or misdemeanor convictions by the prosecutor solely for impeachment purposes has application as binding precedent to cross-examinations occurring after June 25, 1974, the decisional date of the case; it was, therefore, applicable to a case tried on July 5, 1974.

Appeal from Recorder's Court of Detroit, Samuel C. Gardner, J. Submitted October 7, 1976, at Detroit. (Docket No. 21525.) Decided December 2, 1976. Leave to appeal applied for.

John W. Draine was convicted of second-degree murder. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A.*

REFERENCES FOR POINTS IN HEADNOTES
[1] 81 Am Jur 2d, Witnesses § 591 *et seq.*
[2] 4 Am Jur 2d, Appeal and Error § 65 *et seq.*
[3] 20 Am Jur 2d, Courts § 183 *et seq.*

*Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Paul D. Borman,* Assistant Prosecuting Attorney, for the people.

*Marshall S. Redman,* Assistant State Appellate Defender, for defendant.

Before: V. J. BRENNAN, P. J., and BRONSON and BASHARA, JJ.

PER CURIAM. Defendant appeals from a jury conviction and sentence for second-degree murder. MCLA 750.317; MSA 28.549. We reverse.

Defendant's trial was held on July 5, 1974. On that date, prior to the selection of a jury, defense counsel motioned the trial court to exclude all inquiry into the defendant's prior convictions, all of which were for misdemeanor and city ordinance violations, should the defendant elect to testify. The court ruled that two of the convictions for ordinance violations could be used by the prosecutor for impeachment purposes. Defendant did not testify at his trial, which was concluded the same day.

On appeal, defendant cites *People v Renno,* 392 Mich 45; 219 NW2d 422 (1974), and asserts that the rule enunciated in that case concerning impeachment with city ordinance and misdemeanor convictions was precedent binding on the trial court at the time of defendant's trial and rendered the trial court ruling permitting such impeachment reversibly erroneous.

There can be little argument on the latter assertion, assuming the validity of the former. In *Renno, supra,* p 55, the Supreme Court held:

"We do not hesitate in this case to prohibit the further use of municipal ordinance or misdemeanor convictions used by the prosecution *solely for impeachment purposes.*" (Emphasis in the original.)

If *Renno* governed the trial court ruling, then the ruling was clearly erroneous. And since defendant did not testify at his trial, and had no prior felony convictions, we could only presume that his failure to testify was at least in part based on the trial court's decision to permit impeachment with ordinance and misdemeanor convictions. We could not find the error to have been harmless.

The arguments on appeal have been directed to the issue of whether *Renno* constituted binding precedent at the time of the trial court ruling. Only after careful consideration, and with great reluctance, do we conclude that it did.

The trial court ruling in question occurred on July 5, 1974. Defendant's attorney, immediately prior to defendant's trial, made an oral motion to exclude any reference at trial to defendant's criminal record. Although several cases were cited in support of the motion, neither defense counsel, the prosecutor, nor the trial judge appears to have been aware of the *Renno* decision, which would have been dispositive of the motion.

This unanimous ignorance of *Renno* is not surprising, since the opinion was not yet generally available for guidance. In the bound volume No. 392 of the Michigan Reports, p 49, it is said that the case was "Decided June 25, 1974". As we understand it, this represents the date on which a copy of the signed slip opinion was filed and available in the Clerk's office of the Supreme Court. Dissemination of the slip opinion occurred slightly later, but the circulation was limited and did not

include the state's trial judges.[1] General circulation would not have occurred until publication of the next issue of the advance sheets of Michigan Reports, published monthly during the Supreme Court's term. Although the date of *Renno's* publication in the advance sheets was not carried forward in the permanent bound volume, our research discloses a publication date of July 30, 1974.

For all practical purposes, *Renno* was not available to provide guidance for the trial court's ruling on July 5, 1974.

Despite this, defendant insists adamantly that *Renno* was Supreme Court precedent, binding on the trial judge, on that date. Defendant refers us to a subsequent Supreme Court opinion in *People v Sanders,* 394 Mich 439; 231 NW2d 639 (1975), where the retroactive application of *Renno* was discussed. The Court set guidelines for such retroactive application, and then stated:

"Otherwise, *Renno* will be applied to those cross-examinations occurring after the decisional date of *Renno, supra.*" *Sanders, supra,* pp 441–442.

Bound as we are by the Supreme Court's interpretations of their own cases, our problem is narrowed to interpreting when the "decisional date" of *Renno* was. We see no alternative to holding that the decisional date was the date stamped on the slip opinion, when the opinion was filed in the

---

[1] This initial circulation included the parties, the trial judge involved in the case, Court of Appeals judges, and regular subscribers. We understand that the present procedure calls for circulation to trial judges of summaries of Supreme Court decisions prepared by the Supreme Court Reporter. This procedure is of relatively recent vintage. Today it provides at least some opportunity for Supreme Court decisions to become known relatively quickly, but was not the practice at times relevant to this case.

Clerk's office, and which was carried forward into the permanent copy of Michigan Reports as the date on which the case was decided. The decisional date of *Renno* was June 25, 1974, and defendant's conviction must be reversed.

We must reject plaintiff's argument based on GCR 1963, 866, to the effect that a Supreme Court decision is not effective as binding precedent until 20 days after the opinion is filed with the office of the Clerk of the Supreme Court. That court rule provides in its entirety as follows:

"An order or judgment pursuant to any decision of the Supreme Court shall be entered by the clerk under the direction of the court. Final process to which any party may be entitled upon a judgment or order of the Supreme Court shall be issued by the clerk not less than twenty nor more than thirty days from the time of the entry of such judgment or order unless otherwise ordered by the court or unless application for rehearing timely filed is pending."

We agree with plaintiff that a rule delaying the effective date of Supreme Court decisions for 20 days would have the beneficial effect of making it more likely, though not at all certain, that the decisions would be available by their effective date. Rule 866, however, speaks only of issuing final process to the parties to an appeal and is apparently designed only to facilitate the handling of motions for rehearing, which must also be filed within 20 days. See GCR 1963, 864.4. The rule says nothing about when a rule of law enunciated in a Supreme Court opinion is effective as binding precedent for inferior courts and it would be arbitrary and specious for us to apply it in such a situation.

We do not reach this conclusion casually, nor are we particularly happy with the result we must

reach. We realize that our decision recognizes that no matter how diligent trial attorneys or judges may be in attempting to keep up with Supreme Court rulings, they cannot be sure that they are not committing error which will later require reversal under a previously unavailable Supreme Court decision. We agree with Judge GILLIS, who stated in *People v McMillan,* 68 Mich App 113, 119; 242 NW2d 518 (1976), that: "We should not expect reliance on unavailable judicial pronouncements". The Supreme Court's reference to the "decisional date" of *Renno* precludes us from reaching the result here that was arrived at in *McMillan.* There it was held that the Supreme Court's prohibition of instructions tending to denigrate an alibi defense in *People v McCoy,* 392 Mich 231; 220 NW2d 456 (1974), which was said to apply to "cases tried after the publication of this opinion", was effective as of the date of *McCoy's* publication in the advance sheets of Michigan Reports. If *McMillan* is of any help in this case, it is only to point out that here the Supreme Court did *not* say publication date, but said decisional date, which would appear to evidence a different intent entirely.

What happened in this case emphasizes the absurdity of the present procedure. This defendant was represented by an attorney of the Public Defender's office, which is generally well informed about current developments in the law, yet his attorney was unaware of *Renno.* Had the trial judge read *Renno,* he would surely have suppressed reference to defendant's convictions. Error occurred here only because no one knew of the *Renno* opinion, and, for all practical purposes, the error was unavoidable. We think that the most workable rule would permit a defendant to predi-

cate error on a trial judge's failure to follow a rule of law enunciated in a case not yet published in the advance sheets of the Michigan Reports only if the case is cited specifically in a request to follow the new rule. We cannot forge such a rule. Only the Supreme Court can do that. In this case we must follow what appears to be the expressed intention of the Supreme Court that *Renno* apply to all cases after June 25, 1974. Having decided this, we must reverse defendant's conviction.

Most of the remaining issues raised by defendant on this appeal need not be reached, either because they lack merit or because we do not foresee that they will cause problems on retrial. We point out to defendant that we are bound by the previous order entered by the Supreme Court in this case. *People v Draine,* 391 Mich 820 (1974). Any attack on that order will have to be made in the Supreme Court.

One other issue should be decided at this time. Defendant claims that his decision to go to trial on the second-degree murder charge rather than to plead guilty to a lesser offense was the result of ineffective assistance of counsel in that he relied upon erroneous advice by his trial counsel concerning the admissibility of certain evidence in the event of trial. The trial court held a post-trial evidentiary hearing on this claim and found that defendant's decision had been made upon proper advice. This finding was supported by the testimony at the evidentiary hearing and we are not persuaded that the finding is erroneous. Consequently, there is no merit to defendant's claim of ineffective assistance of counsel.

Reversed and remanded for a new trial.