PEOPLE v BERNARD SMITH

PEOPLE v LARASENA SMITH

OPINION OF THE COURT

1. CRIMINAL LAW—EVIDENCE—OTHER OFFENSES—RES GESTAE.

The general rule is that evidence tending to show the commission of other criminal offenses by a criminal defendant is inadmissible on the issue of his guilt or innocence of the offense charged because whatever probative value such evidence has is outweighed by the disadvantage of diverting the trier of fact from an objective appraisal of the defendant's guilt or innocence; an exception to this rule is that the acts, conduct and demeanor of the defendant at the time of or shortly before or after the offense is claimed to have been committed may be shown as part of the res gestae; proof of such acts is not rendered inadmissible by the fact that they may tend to show the commission of another crime.

2. CRIMINAL LAW—EVIDENCE—OTHER OFFENSES—EXPLANATION AND CORROBORATION—VARIANCE OF PROOF—INFORMATION.

The admission of evidence of other criminal offenses which is offered solely in explanation and corroboration of the evidence of the act charged in an information does not constitute a variance of proofs from the information; therefore, it was not error for a trial judge, at defendants' trial for armed robbery, to allow the prosecution to introduce into evidence two items that were seized from the defendants' residence when they were arrested which had been stolen from the victim's home but were not listed on the information.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 4, 7–10] 29 Am Jur 2d, Evidence §§ 320, 321.
[3] 75 Am Jur 2d, Trial §§ 827, 828.
[4, 7–10] 29 Am Jur 2d, Evidence § 327.
[5, 6] 73 Am Jur 2d, Statutes § 249 *et seq.*
[6, 9] 50 Am Jur 2d, Larceny §§ 44, 49, 56.
   73 Am Jur 2d, Statutes §§ 293–295.

3. Criminal Law—Instructions to Jury—Reasonable Doubt.

Instructions given to the jury regarding reasonable doubt are proper where the instructions given are consistent with past instructions approved by the Court of Appeals.

4. Criminal Law—Felonies—Evidence—Prior Convictions—Impeachment—Misdemeanors—Statutes.

The crimes of unlawful driving away of an automobile and attempted unlawful driving away of an automobile are felonies; therefore, use of a defendant's prior convictions for committing those offenses does not violate the rule which prohibits the use of prior misdemeanor convictions for impeachment purposes (MCLA 750.92, 750.413; MSA 28.287, 28.645).

5. Statutes—Statutory Construction—Inconsistencies.

It is a fundamental rule of statutory construction that courts are bound, whenever possible, so to construe statutes as to give them validity and a reasonable construction; seeming inconsistencies in the various provisions of a statute should be reconciled, if possible, so as to arrive at a meaning which gives effect to all parts of the statute.

6. Statutes—Construction—Intention of Statutes—Conflicts Between Statutes—Attempted Larceny—Misdemeanors—Felonies.

Statutory provisions should be construed whenever possible so as not to conflict with other statutory provisions; where one statutory provision expresses a specific intention that conflicts with a general intention expressed elsewhere, the particular intention is to be regarded as an exception to the general intention; therefore, the offense of attempted larceny in a building should be treated as a misdemeanor for purposes of determining the admissibility of such a conviction for impeachment purposes, despite the fact that a general statute makes this crime a felony since it is punishable by imprisonment in a state prison, because the specific statute defining the crime makes it a misdemeanor (MCLA 750.7, 750.92; MSA 28.197, 28.287).

7. Criminal Law—Evidence—Impeachment—Prior Convictions—Misdemeanors.

The prohibition on the use of *all* misdemeanor convictions for impeachment purposes remains the rule of law in Michigan, absent the adoption of Michigan's proposed rules of evidence, or reconsideration of the issue by the Supreme Court.

8. CRIMINAL LAW—EVIDENCE—IMPEACHMENT—PRIOR CONVICTIONS—
   MISDEMEANORS—DEFENDANT'S RIGHT TO TESTIFY.

A trial judge's decision to allow a defendant to be impeached by
evidence of a prior misdemeanor conviction cannot be consid-
ered to be harmless error, even though the defendant had prior
felony convictions which would have been used as impeachment
evidence had the defendant taken the stand, where the defend-
ant, faced with the probability of impeachment by his complete
criminal record, chose not to testify in his own behalf; where
the issue involved is as crucial to the judicial process as a
defendant's right to testify in his own behalf, any doubt as to
the motivating factors behind a decision to forego that right
must be resolved in the defendant's favor.

DISSENT BY J. H. GILLIS, J.

9. CRIMINAL LAW—EVIDENCE—ATTEMPTED LARCENY—MISDEMEANOR
   —IMPEACHMENT—RULES OF EVIDENCE.

*Attempted larceny from a building is a high misdemeanor pun-
ishable by two years in prison and under the Michigan Rules of
Evidence, effective March 1, 1978, such an offense clearly would
be admissible for impeachment purposes.*

10. CRIMINAL LAW—EVIDENCE—IMPEACHMENT—PRIOR CONVICTIONS—
    MISDEMEANORS—HARMLESS ERROR.

*A trial judge's failure to grant a defense motion to suppress a
defendant's misdemeanor conviction for impeachment purposes
was harmless error where the defendant would have been
impeached by evidence of his prior felony convictions.*

Appeal from Recorder's Court of Detroit, John
Patrick O'Brien, J. Submitted December 8, 1977,
at Detroit. (Docket Nos. 30241, 77-104.) Decided
March 6, 1978. Leave to appeal applied for.

Bernard Smith and Larasena Smith were con-
victed of armed robbery. Defendants appeal. Ber-
nard Smith's conviction is reversed and the matter
remanded, and the conviction of Larasena Smith is
affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*

Prosecuting Attorney, *Edward R. Wilson,* Research, Training & Appeals, and *Richard A. Neaton* and *Paul C. Louisell,* Assistant Prosecuting Attorneys, for the people.

*Sallen, Sallen, Seymour & Sallen,* for defendants on appeal.

Before: M. F. CAVANAGH, P. J., and J. H. GILLIS and D. C. RILEY, JJ.

D. C. RILEY, J. The charges in the instant matter stem from a robbery which took place in a residence located within the City of Detroit on February 24, 1976.

The record reveals the following facts:

The victim left her home on the morning in question to drive a roommate to work. Upon her return, she noticed that the door of the house had been tampered with. As she entered the residence, she discovered a masked man with a gun who ordered her into the dining room. The intruder then placed a pillow case over her head and bound her with some cord. The man then removed her ring and watch as he talked with his accomplice. The victim recognized the voice of the accomplice as that of defendant, Larasena Smith, with whom she was acquainted. After the intruders left, the victim untied herself and discovered that her keys and car were missing. She also noticed a strange cap which she carried with her to a nearby bar where the police were notified of the crime.

It appears that the owner of the bar recognized the cap as one belonging to defendant, Bernard Smith. On the basis of this identification, coupled with the fact that the victim recognized defendant Larasena Smith's voice at the scene of the crime,

the police proceeded to the Smith residence and arrested the defendants. During the arrest, the police officers confiscated certain items which were later identified as belonging to the victim and her roommate.

Defendants were then charged with armed robbery, contrary to MCLA 750.529; MSA 28.797, and subsequently were convicted by a jury in Detroit Recorder's Court. Defendants appeal as of right alleging several instances of error.

Defendants first contend that the trial court erred in admitting into evidence property which was not listed in the information.

At trial, the prosecution sought to admit into evidence a shotgun and a sewing machine that were seized from defendants' residence when they were arrested. These items were stolen from the victim's home but were not listed in the information filed against the defendants.[1] Defendants contend that such evidence is inadmissible in that it violates the rule set forth in *People v DerMartzex,* 390 Mich 410; 213 NW2d 97 (1973).

"While evidence of a prior conviction of a defendant may be admissible to impeach his credibility, the general rule is that evidence tending to show the commission of other criminal offenses by the defendant is inadmissible on the issue of his guilt or innocence of the offense charged.

"Evidence of other crimes is barred because it has been decided that whatever probative value such evidence has is outweighed by the disadvantage of diverting the trier of fact from an objective appraisal of the defendant's guilt or innocence." 390 Mich at 413.

However, an exception to the rule is set forth in

---

[1] The information charged the defendants with feloniously stealing the victim's watch, ring and keys.

*People v Scott,* 61 Mich App 91, 95; 232 NW2d 315 (1975).

" 'It is elementary that the acts, conduct and demeanor of a person charged with a crime at the time of, or shortly before or after the offense is claimed to have been committed, may be shown as a part of the *res gestae. Proof of such acts is not rendered inadmissible by the fact that they may tend to show the commission of another crime.' People v Savage,* 225 Mich 84, 86; 195 NW 669 (1923)." (Emphasis supplied.)

Here, the prosecutor introduced the evidence in question to establish that the defendants were in the victim's home.

The introduction of such evidence could prejudice the defendants' case in that the jury could find the defendants guilty of stealing items not listed in the information. However, to do so, the jury would have to disregard the trial court's clear instructions.

"The third element is that at the time of that assault, the Defendant took the money or property alleged to have been taken, in this case, we're talking about *keys and ring and a watch,* which money or property did not belong to the defendant." (Emphasis supplied.)

We will not presume that the jury disregarded this instruction.

Based upon this record, we find that the trial judge did not abuse his discretion in determining that the probative value of the evidence outweighed its prejudicial effect.[2]

Defendants also claim that they were prejudiced because the admission of the evidence constituted

---

[2] *People v McCartney,* 60 Mich App 620; 231 NW2d 472 (1975), *People v Draine,* 72 Mich App 592; 250 NW2d 139 (1976).

an impermissible variance of the proofs from the information. The admission of evidence of other offenses which is offered solely in explanation and corroboration of the evidence of the act charged in the information does not constitute a variance. *People v Jenness,* 5 Mich 305 (1858), *People v King,* 365 Mich 543; 114 NW2d 219 (1962).

Accordingly, we find no error in respect to this issue.

Defendants next contend that the trial court's instruction on reasonable doubt was improper and mandates reversal of their convictions.

The trial court instructed the jury on reasonable doubt as follows:

"What do we mean when we talk about reasonable doubt? Again, I instruct you that the People must prove the Defendants guilty beyond a reasonable doubt. I said reasonable doubt, that doesn't mean beyond all doubt, it doesn't mean beyond a shadow of a doubt; we're talking about a reasonable doubt.

"A reasonable doubt is exactly what those two words signify, *a doubt which is founded in reason, a doubt for which you can give a reason for entertaining.* It can be a doubt which arises from the evidence which you've heard during this case or it can be a doubt which arises from the lack of evidence. To put it another way, *the People don't have to eliminate all doubt from your minds.* To do that would be to put you in the position of a witness, someone who has seen what happened rather than as a Juror because only if you were a witness to the event could you say that you know what happened.

"But the proofs presented by the People *must eliminate doubt based upon reason, any doubt which has a rational explanation.*

"Each and every element of the crime charge must be proven by that standard of proof beyond a reasonable doubt and a reasonable doubt is not something flimsy or fanciful or fictitious, nor is it any doubt based upon any

sympathy or prejudice or any bias." (Emphasis supplied.)

Defendants' contention is without merit. The instruction given by the trial court is consistent with past instructions approved by this Court.[3]

Defendant, Bernard Smith, next contends that the trial court erred in denying his motion to suppress his prior misdemeanor convictions which the prosecution intended to use for impeachment purposes if he testified.

At trial, defendant's attorney filed a motion to preclude the prosecution from using his prior misdemeanor convictions for impeachment purposes. The trial court denied the motion, and defendant chose not to testify in his own behalf.

Defendant claims that the court's ruling is in direct conflict with the rule set forth in *People v Renno,* 392 Mich 45; 219 NW2d 422 (1974), which prohibits the use of prior misdemeanor convictions for impeachment purposes.

Defendant contends that his convictions for attempted unlawful driving away of an automobile and attempted larceny in a building are misdemeanors, pursuant to MCLA 750.92; MSA 28.287, and are therefore barred from being used for impeachment purposes by *Renno, supra.*

Unlawful driving away of an automobile is a felony under Michigan law. MCLA 750.413; MSA 28.645 provides:

"Any person who shall, wilfully and without authority, take possession of and drive or take away, and any person who shall assist in or be party to such taking possession, driving or taking away of any motor vehicle, belonging to another, shall be guilty of a *felony,* punish-

---

[3] *People v Finley,* 38 Mich 482 (1878), *People v Poe,* 27 Mich App 422; 183 NW2d 628 (1970), *People v Ames,* 60 Mich App 168; 230 NW2d 360 (1975).

able by imprisonment in the state prison for *not more than 5 years."* (Emphasis supplied.)

Pursuant to MCLA 750.92; MSA 28.287 attempted unlawful driving away of an automobile is also a felony:

"If the offense so attempted to be committed is punishable by imprisonment in the state prison for life, or for 5 years or more, the person convicted of such attempt shall be guilty of a *felony,* punishable by imprisonment in the state prison not more than 5 years or in the county jail not more than 1 year." (Emphasis supplied.)

Since the aforementioned conviction was a felony, its use for impeachment purposes was within the trial court's discretion,[4] and the *Renno* rule does not apply.

We now turn to defendant's conviction for attempted larceny in a building. This particular crime is defined by MCLA 750.92; MSA 28.287 as a misdemeanor. However, under MCLA 750.7; MSA 28.197, attempted larceny in a building is a felony as it is punishable by imprisonment in a state prison.

This inconsistency can be reconciled by applying well-established rules of statutory construction to the facts at hand.

"[It is a] fundamental rule of construction * * * [that] courts are bound, whenever possible, so to construe statutes as to give them validity and a reasonable construction; seeming inconsistencies in the various provisions of a statute should be reconciled, if possible, so as to arrive at a meaning which gives effect to all parts of the statute." *In re Petition of State Highway Commission,* 383 Mich 709, 714–715; 178 NW2d 923, 926–927 (1970).

" 'When a general intention is expressed, and also a particular intention which is incompatible with the

---

[4] *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974).

general one, the particular intention shall be considered an exception to the general one.'

"The above statement was quoted with approval in *Mayor of Port Huron v City Treasurer of Port Huron,* 328 Mich 99, 112 [43 NW2d 77 (1950)], where it was said, in further discussion, that (pp 111, 112):

" 'A special statute shall be given effect as an exception to the general statute in order to carry out the legislative intent. *Board of Education v Blondell,* 251 Mich 528 [232 NW 375 (1930)]. When a general intention is expressed and also a particular intention which is incompatible with the general one, the particular intention shall be considered as an exception to the general one. *Attorney General, ex rel Owen v Joyce,* 233 Mich 619 [207 NW 863 (1926)]; *Heims v School District No 6 of Davison Township,* 253 Mich 248 [234 NW 486 (1931)], and cases therein cited.' " *Bullinger v Gremore,* 343 Mich 516, 544; 72 NW2d 777 (1955). See also *Minor Child v Health Commissioner,* 16 Mich App 128, 131; 167 NW2d 880 (1969).

In the instant matter, MCLA 750.92; MSA 28.287 deals exclusively with the offense of attempted larceny in a building. MCLA 750.7; MSA 28.197 is the general statutory provision that defines what constitutes a felony under Michigan law.

The more specific statute should be controlling under the circumstances, and we rule, as a matter of law, that attempted larceny in a building is a misdemeanor in spite of the fact that it is punishable by up to two years in a state prison.

Having ruled that the offense in question is a misdemeanor, we must now determine if *Renno, supra,* barred its use for impeachment purposes at trial.

In *Renno, supra,* the Michigan Supreme Court expressly held that "municipal ordinance or *misdemeanor* convictions" cannot be used for impeachment purposes. 392 Mich at 55. (Emphasis added.)

Even though the dissent makes a comprehensive argument that the *Renno* rule should not be applied to two-year or high misdemeanors, the fact remains that the Supreme Court has not acted to so limit the reach of *Renno.* We do not believe that this Court has the power to impose its own limits on *Renno's* seemingly unambiguous language.

Absent the adoption of Michigan's proposed rules of evidence, or Supreme Court response to the *People v McMillan*[5] majority's urging of a review of *Renno,* the prohibition on the use of *all* misdemeanor convictions for impeachment purposes remains the rule of law in Michigan.

We also cannot agree that the trial court's decision was harmless error under the facts of this case. In *People v Hagar,* 73 Mich App 536; 252 NW2d 484 (1977), cited by the dissent, the defendant chose to testify and was impeached by several convictions, all but one apparently misdemeanor convictions. The *Hagar* Court, in a brief discussion, held that this *Renno* violation was harmless since the defendant had already been impeached by a felony conviction.

Without wishing to comment on the wisdom of the *Hagar* decision, we find it distinguishable from the case at bar. In *Hagar* this Court had a record of the defendant's testimony and could evaluate the impact of the impeachment by use of misdemeanor convictions. Since the nature of those convictions, and Hagar's felony conviction, were not revealed in the opinion, it can only be inferred that the prejudice to defendant was not sufficient to mandate reversal of the conviction.

In the present case, however, defendant, faced with the probability of impeachment by his complete criminal record, chose not to testify. This

[5] 68 Mich App 113; 242 NW2d 518 (1976).

Court has no record on which to evaluate the reasons behind defendant's decision. While it is conceivable that defendant relinquished his right to testify solely because of a desire to keep his felony conviction off the record, it is equally conceivable that the combined effect of the felony and misdemeanor was the factor that swayed the decision. It is also necessary to note that the misdemeanor conviction here was for a larceny offense, and thus may have had significant impeachment value, especially in a trial for armed robbery. Where the issue involved is as crucial to the judicial process as a defendant's right to testify in his own behalf, any doubt as to the motivating factors behind a decision to forego that right must be resolved in the defendant's favor.

Accordingly, the decision to allow defendant to be impeached by a misdemeanor conviction cannot be considered to be harmless error.

We have examined the issue of search and seizure and find no reversible error. See *Harris v US,* 390 US 234; 88 S Ct 992 (1968), *People v Eddington,* 387 Mich 551, 565; 198 NW2d 297 (1972).

The conviction of defendant Bernard Smith is reversed and remanded. The conviction of Larasena Smith is affirmed.

M. F. CAVANAGH, P. J., concurred.

J. H. GILLIS, J. *(dissenting).* I respectfully dissent. The *Renno* case[1] set forth the following rule:

"We do not hesitate in this case to prohibit the further use of municipal ordinance or misdemeanor convictions used by the prosecution *solely for impeachment purposes.* This type of conviction was never intended by our Legislature to fall within the confines of MCLA 600.2158; MSA 27A.2158, or MCLA 600.2159; MSA 27A.2159. This is affirmatively shown by the legislative history of these statutes. It is time that this Court brings our current interpretation of these stat-

---

[1] *People v Renno,* 392 Mich 45; 219 NW2d 422 (1974).

utes back in line with their original purposes." *Renno, supra,* at 55.

However, the *Renno* Court carefully acknowledged that the nature and extent of any rule set forth in *Renno* would be subject to future modification.

"The nature of and the extent of any rule which this Court may devise in this area is still not settled." *Renno, supra,* at 51.

A recent Supreme Court case has questioned the validity of *Renno, supra.*

"In *People v Renno,* 392 Mich 45, 55; 219 NW2d 422 (1974), this Court held that municipal ordinance or misdemeanor convictions may not be used for impeachment purposes.

"The proposed Michigan Rules of Evidence would provide that the credibility of a witness may not be impeached by evidence that he was convicted of a crime punishable by imprisonment for one year or less unless the crime involved dishonesty or false statement. MRE 609(a)(2). This rule would modify *Renno, Sting [Sting v Davis,* 384 Mich 608; 185 NW2d 360 (1971)], and GCR 1963, 607. It appears that before this case is likely to be retried this Court will act comprehensively regarding the proposed Michigan Rules of Evidence." *Kirby v Larson,* 400 Mich 585, 600; 256 NW2d 400 (1977).

The Michigan Supreme Court adopted the proposed Michigan Rules of Evidence effective March 1, 1978.

This Court in *People v McMillan,* 68 Mich App 113; 242 NW2d 518 (1976),[2] has interpreted the *Renno* case, *supra,* as not mandating per se rever-

---

[2] Leave to appeal was denied by the Michigan Supreme Court, 399 Mich 825 (1977).

sal of a conviction when prior misdemeanor convictions are used for impeachment purposes at trial. The *McMillan* Court stated that under certain circumstances the use of prior misdemeanor convictions for impeachment purposes would be harmless error. The *McMillan* Court went on to conclude that *Renno, supra,* was in need of clarification in respect to what exactly constitutes a misdemeanor for impeachment purposes under the case:

"*Renno* held that from hence forward, only convictions for infamous crimes could be used to impeach a witness. *Renno* further equated infamous crimes with felonies.

"We do not think that, in Michigan, the term 'infamous crime' can necessarily be equated with the term 'felony'. In *Attorney General v Montgomery,* 275 Mich 504, 513; 267 NW 550 (1936), our Supreme Court defined an infamous crime as follows:

" 'Whether a crime is infamous or not is not determined by the nature of the offense (2 Bouvier's Law Dictionary [Rawle's 3d Rev] p 1553, 1554), but by the consequences to the individuals by the punishment prescribed for such offense. *Butler v Wentworth,* 84 Me 25 (24 Atl 456, 17 L.R.A. 764). Crimes subject to infamous punishments are infamous crimes, *and the term "infamous crime" means any crime punishable by imprisonment in the state prison.'* (Citations omitted.)

\*    \*    \*

"It would then appear that under *Montgomery, supra,* impeachment should be permissible by use of prior convictions based on a crime punishable by imprisonment in the state prison, regardless of whether it is dubbed 'felony' or 'misdemeanor'.

"We do not point out this apparent inconsistency to nitpick at the Supreme Court. Real problems are presented in this area. For example, the crime of unlawfully taking and using an automobile is labeled a misdemeanor, but, nonetheless, carries the possible sentence of two years imprisonment in a state penitentiary.

MCLA 750.414; MSA 28.646. On the other hand, the crime of issuing a check without an account or credit is labeled a felony although it also carries a possible maximum sentence of two years in the state prison. MCLA 750.131a; MSA 28.326(1). Under *Renno,* the prosecutor would be allowed to impeach credibility by using a conviction under MCLA 750.131a; MSA 28.326(1); he would not be able to do so by using one under MCLA 750.414; MSA 28.646. Yet the two statutes carry exactly the same penalties, and we believe, under *Montgomery,* there is no distinction between them in regards to impeaching credibility." *McMillan, supra,* at 123–124.

The offense in the instant matter, attempted larceny from a building, is a high misdemeanor punishable by two years in prison. Under the Michigan Rules of Evidence, effective March 1, 1978, such an offense clearly would be admissible for impeachment purposes:

"For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if

"(1) the crime was punishable by death or *imprisonment in excess of one year* under the law under which he was convicted, or the crime involved theft, dishonesty or false statement, regardless of the punishment, and

"(2) the court determines that the probative value of admitting this evidence on the issue of credibility outweighs its prejudicial effect." (Emphasis supplied.) MRE 609(a).

It should also be noted that the majority in the *McMillan* case, *supra,* urged the Supreme Court to allow the use of high misdemeanor convictions for impeachment purposes by restricting the *Renno*

rule to those crimes carrying a maximum penalty of 90 days in jail.

Regardless of the construction the Supreme Court gives to *Renno* in respect to what constitutes a misdemeanor, the trial judge's failure to suppress defendant's misdemeanor convictions for impeachment purposes was harmless error under the circumstances in this case. Since defendant would have been impeached by his prior felony conviction,[3] I fail to see how allowing further impeachment via a misdemeanor conviction would result in a miscarriage of justice.[4]

Accordingly, I would affirm defendants' convictions.

---

[3] *People v Hagar,* 73 Mich App 536; 252 NW2d 484 (1977).

[4] *People v Roberson,* 55 Mich App 413; 222 NW2d 761 (1974), *People v McMillan,* 68 Mich App 113; 242 NW2d 518 (1976).