# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

TARONE DEVON WASHINGTON,

      Defendant-Appellant.

UNPUBLISHED
July 6, 2017

No. 330345
Berrien Circuit Court
LC No. 2015-001344-FH

---

Before: MURPHY, P.J., and SAWYER and SWARTZLE, JJ.

SWARTZLE, J. (*concurring in part, dissenting in part*).

When determining how to characterize a criminal offense that is itself purportedly an element of a different, primary criminal offense, our case law requires that courts apply one deceptively simple rule—courts must look solely to the definitions and labels of the code where the primary offense is located. Sometimes the underlying offense and the primary offense will be found in the same code, and normal rules of statutory construction will resolve any conflict. Sometimes the two offenses will be found in different codes, however, and any conflict must be resolved by applying the primary offense code's definitions and labels and ignoring those found in the underlying offense's code.

The majority fails to apply this rule when it vacates defendant's conviction for possession of a firearm during the commission of a felony. Accordingly, I respectfully dissent from that part of the majority opinion. I fully concur with the remainder of the majority opinion.

*The Promise and Peril of a Syllogism.* As noted in the majority opinion, felony firearm is a Penal Code offense. MCL 750.227b. One element of felony firearm is the commission or attempted commission of an underlying felony. Here, the jury convicted defendant of felony firearm, and as the felony component of that crime, the jury was instructed that keeping or maintaining a drug house was a felony.

The offense of keeping or maintaining a drug house is found in the Public Health Code, MCL 333.7405, and there it is labeled a "misdemeanor," MCL 333.7406. But for that label, however, the offense would otherwise meet the general definition of a "felony" in the Penal Code. MCL 750.7. To resolve the statutory conflict, rather than apply the Penal Code's definition of felony to the underlying offense as our case law requires, the majority appears to rely on the following syllogistic reasoning:

-1-

Major premise: "[T]he Legislature intended two-year misdemeanors to be considered as misdemeanors for purposes of the Penal Code." *People v Smith*, 423 Mich 427, 434; 378 NW2d 384 (1985) [Maj op at p 9.]

Minor premise: Keeping or maintaining a drug house is a two-year misdemeanor. MCL 333.7406. [Maj op at p 6.]

Conclusion: Therefore, keeping or maintaining a drug house is a misdemeanor for purposes of the Penal Code. [Maj op at p 8-9.][1]

The promise of a syllogism is that the conclusion is unassailable. The peril of a syllogism is that the conclusion is unassailable *only if* the premises are sound. Enticed by the promise, the majority relies on a single clause from the introduction of *People v Smith* for its major premise. But in so doing, the majority fails to engage meaningfully with the rest of *Smith*, as shown below. The major premise unsound, the majority's conclusion fails.

*My Reading of* People v Smith. I agree with the majority that *Smith* is central to the outcome of this case, although we apparently believe it is central for different reasons. On the one hand, I read *Smith* as standing for the general proposition that location matters: Definitions and labels in a code apply to and throughout that code, but that code alone. When a primary offense and underlying offense are located in the same code, then any conflict is resolved through traditional rules of statutory construction. When the two offenses are located in different codes, the definitions and labels in the primary offense code trump those in the other code. On the other hand, the majority reads *Smith* as "not to draw a distinction between which code the underlying offenses are in" and that any offense labeled a two-year misdemeanor, regardless of where it is found, must be treated as a misdemeanor for purposes of the Penal Code. See maj op at p 9. Given these divergent understandings, a deeper dive into *Smith* is warranted.

In *Smith*, our Supreme Court considered the question whether the underlying offenses of joyriding and resisting and obstructing an officer were misdemeanors or felonies for purposes of the primary offenses of habitual offender, probation, and consecutive sentences, one element of each was the commission of an underlying felony. The underlying offenses were both Penal Code offenses, while the habitual-offender, probation, and consecutive-sentence offenses were found in the Code of Criminal Procedure. In the Penal Code, the underlying offenses were specifically labeled as "misdemeanors punishable by a maximum of two years in the state prison," i.e., "two-year" or "high" misdemeanors. *Smith*, 423 Mich at 435. But, under the general definition of felony found in the Code of Criminal Procedure, both underlying Penal Code offenses would have been felonies, not misdemeanors. *Id.* at 439. Thus, for purposes of the habitual-offender, probation, and consecutive-sentence offenses, the Court in *Smith* had to decide whether the "misdemeanor" labels on the underlying offenses in the Penal Code controlled over the general definition of "felony" in the Code of Criminal Procedure.

---

[1] To be clear, putting the majority's analysis in syllogistic form is my attempt at sussing out the majority's analysis, and if I have misconstrued that analysis, then the error is mine.

The Supreme Court started its statutory construction by recognizing, "While the Penal Code and the Code of Criminal Procedure relate generally to the same thing and must therefore be read *in pari materia*, the two codes were separately enacted and have distinct purposes." *Id.* at 442. Given this reality, the Court explained, "Each code has its own definitions of 'misdemeanor' and 'felony' in order to more effectively promote the distinct purposes of each." *Id.* With its general definition of "felony," "The Legislature clearly expressed its intent that offenses punishable by more than one year of imprisonment be treated as 'felonies' throughout the Code of Criminal Procedure." *Id.* at 443. As noted above, however, the Legislature did not express a similar intent with offenses in the Penal Code, where some offenses were specifically designated as two-year misdemeanors while other offenses were not specifically designated and thus relied upon the general definitions of "felony" and "misdemeanor" found in the Penal Code. *Id.* at 437-438.

Thus presented with the question of how to apply labels and definitions in different codes, the Supreme Court stated in no uncertain terms:

> It is obvious that the Penal Code definitions apply only to the Penal Code. Similarly, the definitions of the Code of Criminal Procedure are limited in application to that code. To apply the definition of misdemeanor in one statute to the operations of the other statute would defeat the purposes of the other statute.

> We have previously held that the grade given an offense in the Penal Code is not the controlling consideration in determining the procedural rights afforded an accused outside the Penal Code.

> *            *            *

> The label placed upon an offense in the Penal Code is just as irrelevant in determining statutorily mandated post-conviction procedures in the Code of Criminal Procedure as it is in determining constitutionally mandated post-conviction procedures. The three post-conviction statutes at issue here, the habitual-offender statute, the probation statute, and the consecutive sentencing statute, all have the same general purpose: to enhance the punishment imposed upon those who have been found guilty of more serious crimes and who repeatedly engage in criminal acts. In order to achieve the Legislature's intended purpose in the Code of Criminal Procedure, we find that the Legislature meant exactly what it said: Offenses punishable-by-more than one year of imprisonment are "felonies" for purposes of the habitual-offender, probation, and consecutive sentencing statutes. Because misdemeanors punishably by two years of imprisonment fall within the "felony" definition, they may be considered felonies for purposes of these statutes. [*Id.* at 444-445.]

The defendants in *Smith* had argued that such a construction would make meaningless the label of "misdemeanor" placed on the underlying offenses in the Penal Code. The Court rejected this argument,

Defendants argue that this reading renders meaningless the "misdemeanor" label found in the Penal Code, contrary to our responsibility to give effect to all words and provisions, if possible. However, the "misdemeanor" label does have some consequences. The social stigma attached to a misdemeanor conviction is less than that which attaches to a felony conviction. We also note that our constitution disqualifies anyone who "has within the preceding 20 years been convicted of a felony involving a breach of public trust" from service in the Legislature. Const 1963, art 4, § 7. . . . In addition, defendants have failed to recognize that the definitions in each code have full meaning for all purposes of *that* code, but are not simply transferable to the other code. [*Id.* at 445 n 2.]

On the critical distinction between the circumstance where the primary and underlying offenses are in the same code versus the one where they are in different codes, Justice Riley explained his concurring vote in *Smith* in light of his vote in an earlier case:

I write separately to explain what might be deemed an inconsistency between Chief Justice WILLIAMS' opinion and my opinion in *People v Bernard Smith*, 81 Mich App 561; 266 NW2d 40 (1978), *rev'd on other grounds* 406 Mich 926 (1979).

In *Bernard Smith*, the Court of Appeals held that the offense of attempted larceny in a building should be treated as a misdemeanor for purposes of determining the admissibility of such a conviction for impeachment purposes, despite the fact that, according to the Penal Code's general definitional provision, MCL 750.7; MSA 28.197, the crime is a felony. That result was reached because the specific provision of the Penal Code defining the crime made it a misdemeanor. MCL 750.92; MSA 28.287.

Thus, *Bernard Smith* dealt with a conflict between two provisions of one act—the Penal Code—unlike the cases decided today which involve provisions in the Penal Code and the Code of Criminal Procedure. [*Smith*, 423 Mich at 464-465 (Riley, J, concurring).]

Given this, I read *Smith* as drawing a bright line between cases involving primary and underlying offenses in the same code versus those involving offenses in different codes.

As for the majority's seemingly critical reliance on the particular clause from *Smith*— "the Legislature intended two-year misdemeanors to be considered as misdemeanors for purposes of the Penal Code"—two points are instructive. First, the clause is found in the introduction of *Smith* and, accordingly, is physically divorced from *Smith*'s analysis, i.e., the majority takes the clause out of context. Second, and more importantly, a fair reading of the introduction and the subsequent analysis confirms that the Court was simply recognizing that the underlying offenses in *Smith* were specifically *labeled* as misdemeanors in the Penal Code and, for purposes of the Penal Code, those specific labels must control over the general definition found in that code. With this clause, the Court did not intend to proclaim a general rule that any and all two-year misdemeanors, regardless of whether they are Penal Code or non-Penal Code offenses, must always be treated as underlying misdemeanors for purposes of a primary offense

in the Penal Code. Nothing found in the Penal Code would suggest that the Legislature intended such a reading, and to arrive at such a reading, one must bypass all of the Court's subsequent discussion in *Smith* about the key distinction to be drawn between definitions and labels within codes versus those across codes.

Therefore, while the majority's major premise may hold for underlying offenses within the Penal Code, the premise fails for underlying offenses outside of that code, because we are told by the *Smith* Court that definitions and labels in one code "are simply not transferrable to the other code." *Id.* at 445 n 2.

*Subsequent Case Law Consistent with this Reading.* Subsequent case law from this Court supports my reading that there is a key distinction between cases involving primary and underlying offenses in different codes and cases involving offenses in the same code. Consider first this Court's decision in *People v Baker*, 207 Mich App 224; 523 NW2d 882 (1994). In that case, the defendant argued that resisting arrest (a Penal Code offense) did not qualify as a felony for purposes of felony firearm (a Penal Code offense). This Court agreed, concluding that the Legislature had specifically labeled resisting arrest as a misdemeanor in the Penal Code, and regardless of whether resisting arrest would have otherwise met the Penal Code's definition of felony, the Legislature's "specific designation" controlled over the more general definition. *Id.* at 225. This decision was consistent with *Smith* because it applied Penal Code labels when both the underlying and primary offenses were found in the same code. See *id.* (citing *Smith*, 423 Mich at 444); see also *Smith*, 423 Mich at 444 ("It is obvious that the Penal Code definitions apply only to the Penal Code.").

This Court faced a similar situation in *People v Williams*, 243 Mich App 333; 620 NW2d 906 (2000). The defendant in *Williams* argued that resisting arrest (a Penal Code offense) was not a felony for purposes of absconding on a felony bond (a Penal Code offense). Like in *Baker*, resisting arrest was specifically labeled as a misdemeanor in the Penal Code. Citing *Baker*, this Court agreed and held, "Resisting arrest is by definition a misdemeanor under the Penal Code, and, therefore, cannot serve as a felony for purposes of establishing the crime of absconding on a felony bond." *Id.* at 335 (internal citations omitted). This decision and the one in *Baker* were consistent with *Smith*, but the factual circumstances were different, as *Williams* and *Baker* involved an underlying offense and primary offense found in the same code, while *Smith* involved an underlying offense and primary offense found in different codes.

Finally, in a relatively recent unpublished decision of this Court, the panel applied a similar analysis as the one I outline here. In *People v Thomas*, unpublished opinion per curiam of the Court of Appeals, issued October 23, 2008 (Docket No. 279439), p 2, the defendant was convicted of an underlying offense of possession of marijuana, an offense labeled a "misdemeanor" in the Public Health Code, MCL 333.7403. The defendant was also convicted of felony-firearm, for which the possession conviction was purported to be the underlying felony. In rejecting the identical argument now accepted by the majority, the *Thomas* panel explained:

> . . . However, this Court has explicitly stated that the provisions of the Penal Code, MCL 750.1 *et seq.*, govern whether a particular offense is a felony for purposes of the felony-firearm statute. See *People v Baker*, 207 Mich App 224, 225; 523 NW2d 882 (1994). Thus, contrary to defendant's argument, the

designation of the offense of possession of marijuana as a misdemeanor in the Public Health Code is irrelevant in determining whether the crime constitutes a felony for purposes of the Penal Code.

The Penal Code provides, "The term 'felony' *when used in this act*, shall be construed to mean an offense for which the offender, on conviction may be punished by death, or by imprisonment in state prison." MCL 750.7 (emphasis added). Because defendant's conviction of possession of marijuana, second offense, was punishable by imprisonment for up to two years, MCL 333.7413(2), we find that it constitutes a felony under the Penal Code. The felony-firearm conviction based on the predicate conviction of possession of marijuana, second offense, is therefore valid. [*Thomas*, unpub op at 2.]

While *Thomas* is unpublished and not binding, I do find the analysis in-line with my own reading of *Smith*, *Baker*, and *Williams*. The analysis is also strongly suggestive that I am not writing on a blank slate.

*General Rule from the Case Law.* From the case law, I read the following general rule: When determining how to characterize a criminal offense that is itself purportedly an element of a different, primary criminal offense, courts must look to the definitions and labels in the primary offense's code, full stop. As our case law shows, there are two distinct circumstances to which this general rule will apply: (1) when the underlying offense and primary offense are in different codes (*Smith* and *Thomas*), and (2) when the two offenses are in the same code (*Baker* and *Williams*). In the first circumstance, the general rule dictates that the definitions in the primary offense's code trump any label or definition in the underlying offense's code. This is *Smith* where, for purposes of the primary offense of habitual offender, the Supreme Court applied the definition of felony in the Code of Criminal Procedure to the underlying offenses of joyriding and resisting and obstructing an officer, even though both underlying offenses were labeled misdemeanors in the Penal Code. (Similarly in *Thomas*, where the underlying offense was in the Public Health Code and the primary offense was in the Penal Code.)

In the second circumstance, the general rule requires that a court apply the definitions and labels in the primary offense's code, which is the same code as the underlying offense. Any conflicts between a definition and label within the same code should then be resolved through normal rules of statutory construction, such as the specific trumps the general. This is *Baker* and *Williams*.

*Application of the General Rule to Defendant's Claim.* Applying this general rule to the facts of this case, the result is straightforward. The primary offense (felony firearm) is a Penal Code offense. The underlying offense (keeping or maintaining a drug house) is a Public Health Code offense. Thus, this is a circumstance like *Smith* and *Thomas* (and unlike *Baker* and *Williams*) where the primary offense and underlying offense are in different codes. Therefore, the definitions of "felony" and "misdemeanor" found in the Penal Code, MCL 750.7 and 750.8, control over the "misdemeanor" label found in the Public Health Code, MCL 333.7406.

Under MCL 750.7, a "felony" is defined as "an offense for which the offender, on conviction may be punished by death, or by imprisonment in state prison." For its part, a

"misdemeanor" is defined in the Penal Code as "any act or omission, *not a felony*, [that] is punishable according to law, by a fine, penalty or forfeiture, and imprisonment, or by such fine, penalty or forfeiture, or imprisonment, in the discretion of the court." MCL 750.8 (emphasis added). The offense of keeping or maintaining a drug house is punishable by imprisonment for not more than 2 years, MCL 333.7406, and any imprisonment over a year may be served in state prison, see MCL 769.28 (requiring that a person sentenced to imprisonment for a maximum of 1 year or less must serve that imprisonment in county jail). Because the offense of keeping or maintaining a drug house "may be punished . . . by imprisonment in state prison," the offense is a felony under the Penal Code. Therefore, the jury properly considered the underlying offense as a felony for purposes of whether defendant committed the offense of felony firearm.

Accordingly, I would affirm on all counts.

/s/ Brock A. Swartzle