THE PEOPLE v. JAMES FINLEY.

*"Insanity"* not a terme de la ley—*"Emotional"* insanity—*"Experts"*—Reasonable doubt.

A "reasonable doubt" is not a mere imaginary, captious or possible doubt, but a fair doubt based on reason and common sense, and growing out of the testimony in the case; it is such a doubt as will leave one's mind, after a careful examination of all the evidence, in such a condition that he cannot say he has an abiding conviction to a moral certainty, of the defendant's guilt.

Every one who is *compos mentis* or a free agent is legally responsible; every one who is *non compos mentis* or has not control of his mind, is irresponsible.

One who indulges that convenient form of insanity which lasts just long enough to enable him to commit an act of violence is as responsible for his condition as a drunken man.

Moral insanity does not necessarily require the evidence of experts.

Evidence tending to show respondent's insanity does not throw upon the prosecution the burden of overbalancing it if it does not raise a reasonable doubt.

A charge must be construed as an entirety.

The Supreme Court is not disposed to criticise the omission to give requests for instructions which tend to distract the jury by calling special attention to metaphysical subtleties or particular testimony.

A jury has a right to consider any testimony that has been allowed to go before it, and to draw natural inferences from it.

It is better to avoid directing the jury's attention to specific bits of evidence or to particular witnesses, unless necessary.

Exceptions before judgment from Newaygo. Submitted February 1. Decided April 2.

Attorney General *Otto Kirchner* for the people.

*Standish, Fuller & Standish* for the respondent.

CAMPBELL, C. J. Respondent was convicted of an assault with intent to murder his wife. The defense on which the questions before us are raised was temporary insanity. It is claimed the court below deprived him of the benefit of a reasonable doubt.

The charge given was in substance that the element of malice was the important element in the case, and must be made out not merely by a preponderance of evidence, but beyond a reasonable doubt. The instruction given as to what was meant by a reasonable doubt* was one of the clearest and most sensible definitions we have ever seen, and such as to be intelligible to any jury,—a merit not always possessed by the requests to charge which are sometimes made in such cases. And after such an explanation the jury were told not to convict unless they had an abiding conviction to a moral certainty of the truth of the charge.

It is claimed, however, that this clear and fair charge was nullified because the court when asked to make a separate charge upon the subject of the mental condition of respondent, is supposed to have qualified it injuriously.

The court in regard to insanity charged that the respondent would be blameless in law, 1, if by reason of insanity he was not capable of knowing he was doing wrong, or 2, if he had not power to resist the temptation to violate the law.

This was correctly charged. The law has no theories on the subject of insanity. It holds every one responsible who is *compos mentis*, or a free agent, and every one irresponsible who is *non compos mentis*, or not having control of his mind. Unfortunately for the administration of justice persons are sometimes found who with small experience and large conceit have succeeded in formulating theories under which, if properly applied, there would be hardly enough sane persons found to sit upon juries or attend to business. If the term "insanity"—which it may be remarked is not a term of the law at all—is so far enlarged as to include persons

---

* "A reasonable doubt is a fair doubt growing out of the testimony in the case; it is not a mere imaginary, captious or possible doubt, but a fair doubt based upon reason and common sense; it is such a doubt as may leave your minds after a careful examination of all the evidence in the case, in that condition that you cannot say you have an abiding conviction to a moral certainty of the truth of the charge here made against the respondent."

who have not only knowledge of wrong but also capacity to resist it, then it includes persons whom the law deems capable of crime, and is a phrase entirely inapplicable in civil or criminal law.

There is some reason to suppose, from the frame of this record, that what the respondent relied on as "temporary or emotional insanity" was that convenient form of it which enables a person who does not choose to bridle his passion, to allow it to get and keep the upper hand just long enough to enable him to commit an act of violence, and then subside. We had occasion to refer somewhat to this subject in *Welch v. Ware*, 32 Mich., 77; and we adhere to the views there expressed, that if a person voluntarily allows his passion to be indulged until it gets the temporary control over him, he is responsible for the condition in which he thus falls, as a man who becomes voluntarily intoxicated is liable for his drunken violence. It is certainly a strange and unsafe doctrine to tolerate that anything should be deemed innocent insanity which in no way affects the mind or conduct except on the one occasion when it is kindled by temporary anger and subsides with the gratification of that malignant passion. The rules of evidence as administered in this State, while they have opened the door very wide to the testimony of experts, without any over-nice scrutiny into their expertness, do not recognize such mental unsoundness as requires legal inquiry, as necessarily involving scientific evidence, or as beyond the domain of common sense. In *Regina v. Oxford*, 9 C. & P., 525, Lord Denman, in a very plain and fair charge, made this remark: "It may be that medical men may be more in the habit of observing cases of this kind than other persons; and there may be cases in which medical testimony may be essential; but I cannot agree with the notion that moral insanity can be better judged of by medical men than by others." We entirely concur in this remark, which is more strikingly applicable to such inquiries as seem to have arisen in the case at bar.

We have had some doubt whether any question is really raised on the record, inasmuch as we are not informed upon what sort of facts the defense of insanity was based. But assuming that there was something which might by possibility amount to a suspicion of insanity, and that the jury could have found that a "paroxysm of temporary or emotional insanity" was really an insane condition in the case before them (which the judge ruled they might do), it is necessary to see what was complained of. The charge excepted to is this:

"Whose duty is it to prove that the respondent was in a mental condition at the time of committing the assault, so as to make him responsible for his acts? I say to you, that the law is, that it is the duty of the defense to first put evidence into the case upon the subject of temporary or emotional insanity, which is the defense here set up; but after such evidence is put into the case by the defendant—that is evidence which tends to show that the respondent at the time in question here was laboring under a paroxysm of temporary or emotional insanity—(and such evidence has been put into this case by the defense)—then it becomes the duty of the prosecution to prove the sanity of the defendant by at least a fair preponderance of evidence, and unless you find they have done so, the defendant must be acquitted."

In other words the judge told the jury that upon this particular fact, the introduction of any evidence whatever by the defense made it necessary for the prosecution to introduce affirmative proof to more than counterbalance it. Inasmuch as it must be for the jury to determine whether or no the effect of the defendant's testimony has been overcome in their minds by adequate proof, if they think the testimony of insanity is thus overcome it is difficult to conceive how they can further regard it, or how they could entertain a reasonable doubt on the case if convinced of the falsehood of the only ground on which the defense rested.

It certainly is not true that the introduction of testimony of such insanity necessarily throws any burden on the prosecution; for the jury may not regard such testimony as of any weight whatever, and may not

believe the opinions of the witnesses. It is only where the testimony creates a reasonable doubt, that there is any occasion to remove the doubt. We do not understand the charge as at all designed or calculated to qualify what had been before said on the general question of proving malice beyond a reasonable doubt. Nothing but the defense of insanity had any bearing on the question of malice, which without this could not— as we judge from the record—have been open to any controversy. We must take the whole charge together in construing it, and we cannot conceive that there was any likelihood of the jury being led to a wrong conclusion concerning the meaning of the judge. The particular request which it is complained he did not give is not so explained by facts in the record as to show that there would have been any propriety or necessity for it after what actually was given.

We are not disposed to criticise with any great nicety the omission of courts to give requests which tend to distract the minds of jurors by calling special attention to metaphysical subtleties or to particular testimony. A jury knows without instruction that it has a right to consider any testimony which has been allowed to go before it, and to draw such inferences as naturally are drawn by each one of the body. When a court calls attention to bits of evidence or to particular witnesses, more than others, there is some danger that undue prominence will be given to what is so designated. It is at least quite as safe to avoid this practice, unless circumstances appear to require it.

While, as before suggested, we might find it difficult —even if the charge appeared to involve doubtful theories of law—to hold it error without a more full showing of its bearing than we can gather from this record, we think that taking the whole charge together there is no reason to believe the jury were misled to the prejudice of the respondent.

We think judgment should be rendered on the verdict.

The other Justices concurred.