## PEOPLE v. POE

1. EVIDENCE—TESTIMONY—POLICE OFFICER—HEARSAY RULE—EXCEPTION.

> Testimony of a police officer regarding previous identifications made by witnesses at police showups is admissible as an exception to the hearsay rule.

2. EVIDENCE—JURY ROOM—SHOWUP SHEETS—HEARSAY—ADMISSIBILITY.

> Admission into evidence of showup sheets and allowing them to be taken into the jury room was error because the sheets are a form of hearsay and a sufficient showing was not made to bring the sheets within any exception to the hearsay rule.

3. EVIDENCE — DECLARANT AVAILABLE — CROSS-EXAMINATION — HEARSAY — HARMLESS ERROR.

> The fact that the declarant is available for cross-examination does not automatically render the admission of hearsay harmless, but the opportunity to cross-examine is relevant to determining whether or not the admission of the evidence was harmless error.

4. EVIDENCE—HEARSAY—COMPETENT EVIDENCE.

> There is no reversible error in a trial when hearsay has been admitted, but the same facts are shown by competent evidence.

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence §§ 371–373.
[2] 53 Am Jur, Trial § 921.
[3] 29 Am Jur 2d, Evidence §§ 493, 496.
[4] 29 Am Jur 2d, Evidence §§ 494, 1103.
[5] 21 Am Jur 2d, Criminal Law § 368.
[6] 53 Am Jur, Trial § 936.
[7] 53 Am Jur, Trial §§ 31–33.
[8] 53 Am Jur, Trial § 464.
[9] 30 Am Jur 2d, Evidence §§ 1171, 1172, 1175.
[10] 53 Am Jur, Trial §§ 541, 542.
[11] 53 Am Jur, Trial §§ 537, 842.

5. CRIMINAL LAW — SHOWUP — MISTAKEN IDENTIFICATION — DUE PROCESS.

 The Court of Appeals must look to the totality of the circumstances to determine if a showup was so unnecessarily suggestive and conducive to irreparable mistaken identification that it amounts to a denial of due process of law.

6. WITNESSES—RECALLING WITNESS—COURTS—DISCRETION.

 Recalling a witness is within the discretion of the trial court.

7. CRIMINAL LAW—COURTS—DISCRETION—EXCLUDING WITNESSES.

 The trial court has the discretion to grant the prosecution's motion to exclude the defense witnesses at the conclusion of the prosecution's case.

8. CRIMINAL LAW—TRIAL—REMARKS OF COUNSEL—WITNESSES—RELIABILITY OF TESTIMONY.

 A statement, made by the prosecution, doubting the reliability of a prosecution witness' testimony, when the testimony was favorable to the prosecution, was not prejudicial to the defendant.

9. CRIMINAL LAW—INSTRUCTIONS TO JURY—REASONABLE DOUBT.

 Instruction that defined reasonable doubt in terms of a doubt one would be willing to act upon instead of a doubt that would cause one to hesitate to act would not mislead a jury and therefore was not erroneous.

10. TRIAL—INSTRUCTIONS TO JURY.

 There is no error when a trial court has given an instruction which in substance is the same as one it has refused to give.

11. TRIAL—INSTRUCTIONS TO JURY.

 A jury instruction must be read as a whole.

Appeal from Recorder's Court of Detroit, Geraldine Bledsoe Ford, J. Submitted Division 1 June 9, 1970, at Detroit. (Docket No. 4,591.) Decided October 28, 1970. Leave to appeal granted January 20, 1971. 384 Mich 799.

Ralph Poe was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Owen J. Galligan,* Assistant Prosecuting Attorney, for the people.

*Philip A. Gillis,* for defendant on appeal.

Before: DANHOF, P. J., and V. J. BRENNAN and J. J. KELLEY, JR.,* JJ.

DANHOF, P. J. The defendant, while represented by appointed counsel, was found guilty of armed robbery, MCLA § 750.529 (Stat Ann 1970 Cum Supp § 28.797) after a trial by jury. The evidence against him consisted of eyewitness testimony. He appeals raising numerous allegations of error.

The defendant's first contention is that it was error to allow a police officer to testify regarding previous identifications made by witnesses at police showups. Defendant also contends that it was error to admit into evidence, and to allow to be taken into the jury room, certain police records known as showup sheets. These showup sheets are records of the showups made by the officer in charge who was on the stand when they were admitted.

At trial, four witnesses made in-court identifications of the defendant. The defendant then introduced, without objection, two showup sheets that indicated that one of the witnesses had made an equivocal identification and that another witness had identified someone other than the defendant. The prosecution then introduced, over objection, the testimony of the police officer that the two other witnesses had made positive identifications at showups.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

The prosecution then introduced, again over objection, showup sheets which also indicated that these witnesses had made positive identifications. The identifying witnesses also testified to the prior identification. When the jury retired they took all four showup sheets into the jury room with them.

The objection raised is that the officer's testimony and the showup sheets are hearsay and thus inadmissible. The defendant concedes that testimony by an identifying witness regarding a prior identification is admissible but he contends that such testimony when offered by a third party is inadmissible as hearsay.

Turning first to the testimony of the police officer we believe that such testimony is admissible in spite of its hearsay nature. Such testimony has been held admissible in two Michigan cases. *People v. Londe* (1925), 230 Mich 484; *People v. Floyd* (1968), 15 Mich App 284. While the Michigan cases do not discuss hearsay there is abundant authority for admitting such testimony as an exception to the hearsay rule.

In *People v. Gould* (1960), 54 Cal 2d 621, 626 (7 Cal Rptr 273, 275, 354 P2d 865, 867), Justice Traynor explained the rule of admissibility as follows:

"Evidence of an extrajudicial identification is admissible, not only to corroborate an identification made at the trial but as independent evidence of identity. Unlike other testimony that cannot be corroborated by proof of prior consistent statements unless it is first impeached, * * * evidence of an extrajudicial identification is admitted regardless of whether the testimonial identification is impeached, because the earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have inter-

vened to create a fancied recognition in the witness' mind. * * * The failure of the witness to repeat the extrajudicial identification in court does not destroy its probative value, for such failure may be explained by loss of memory or other circumstances. The extrajudicial identification tends to connect the defendant with the crime, and the principal danger of admitting hearsay evidence is not present since the witness is available at the trial for cross-examination."

See also *State* v. *Chaney* (1967), 5 Ariz App 530 (428 P2d 1004); *Montos* v. *State* (1956), 212 Ga 764 (95 SE2d 792); *People* v. *Slobodion* (1948), 31 Cal 2d 555 (191 P2d 1); *Preston* v. *Commonwealth* (Ky 1966), 406 SW2d 398; *Proctor* v. *State* (1960), 223 Md 394 (164 A2d 708); *State* v. *Nordstrom* (1968, RI) (244 A2d 842); *State* v. *Redding* (1969, Iowa) (169 NW2d 788); *Clemons* v. *United States* (1968), 133 App DC 27 (408 F2d 1230); 4 Wigmore, Evidence (3d ed), § 1130, p 208.

Thus it was not error to admit the police officer's testimony.

The admission of the showup sheets presents a separate hearsay problem. While testimony regarding a prior identification is admissible the sheets themselves are a form of hearsay and to be admissible they must fit within another exception to the hearsay rule. We do not believe that a sufficient showing was made to bring the sheets within any exception to the hearsay rule and therefore their admission was error. However, we do not believe that this error requires a reversal.

The officer who prepared the showup sheets was available for cross-examination as were the identifying witnesses. While the fact that the declarant is available for cross-examination does not automatically render the admission of hearsay harmless,

*People* v. *Kaplan* (1931), 256 Mich 36, we believe
that the opportunity to cross-examine is relevant to
determining whether or not the admission of the
evidence was harmless error.

It has often been held that when hearsay has
been admitted there is no reversible error when the
same facts are shown by competent evidence. *People*
v. *Kregger* (1953), 335 Mich 457, *cert den* 355 US
929 (78 S Ct 413, 2 L Ed 2d 415); *People* v. *Hawks*
(1919), 206 Mich 233; *People* v. *Goodrode* (1903),
132 Mich 542; *People* v. *Gregory* (1902), 130 Mich
522; *People* v. *Hallaway* (1970), 25 Mich App 605.
In this case both the officers and the identifying
witnesses testified to the prior identifications.

Because of the foregoing, we do not believe that
the erroneous admission of the showup sheets re-
quires a reversal. Nor do we believe that the fact
that the jury took the sheets into the jury room
requires this result. As we have seen, it was en-
tirely proper to introduce evidence of the prior
identification and the showup sheets merely dupli-
cated this evidence. The defendant's basic objec-
tion has been to allowing any proof of a prior iden-
tification and he does not dispute the truth of the
matter contained in the showup sheets. Also, of
the four sheets, two contained matter favorable
to the defendant's case. On these facts we do not
believe that a reversal is required.

The defendant contends that the police showup
was conducted so unfairly as to deprive him of due
process of law. This case was tried before the
decisions in *United States* v. *Wade* (1967), 388 US
218 (87 S Ct 1926, 18 L Ed 2d 1149) and *Gilbert* v.
*California* (1967), 388 US 263 (87 S Ct 1951, 18 L
Ed 2d 1178), and thus the issue of right to counsel
at the showup is not involved. *Stovall* v. *Denno*
(1967), 388 US 293 (87 S Ct 1967, 18 L Ed 2d 1199).

Under the doctrine of *Stovall, supra,* we must look to the totality of the circumstances to determine if the showup was so unnecessarily suggestive and conducive to irreparable mistaken identification that it amounts to a denial of due process of law.

The defendant points to several alleged defects in the showups. He contends that one witness had a one-to-one confrontation with him prior to the showup, that others in the showup were so unlike him in appearance that the identifications must be considered invalid, and that the witnesses were brought together and allowed to arrive at a consensus identification. Examination of the record fails to support these allegations. The defendant also contends that he was prejudiced because the police showed the witnesses photographs, including one of the defendant, before the showups were held. The record shows that the witnesses were shown several hundred photographs and there is nothing to indicate that the procedure followed was unduly suggestive. Applying the test of *Stovall, supra,* we hold that the defendant was not denied due process of law.

The defendant contends that the trial court erred in refusing to recall a witness. Such matters are within the discretion of the trial court. *People* v. *Hossler* (1904), 135 Mich 384. We find no abuse of discretion here.

At the conclusion of the prosecution's case, the trial court granted the prosecution's motion to exclude the defense witnesses. The defendant contends that this was error. It is well settled that this question is within the trial court's discretion. *People* v. *Williams* (1967), 6 Mich App 412. It does not appear that the defendant was prejudiced by this ruling and we find no abuse of discretion.

The defendant contends that the prosecution made improper remarks to the jury during his closing argument. The statement complained of was, "I myself would not consider Mr. Matthew's testimony reliable". Mr. Matthew was a prosecution witness and his testimony was favorable to the prosecution. We do not see how an expression of doubt as to his testimony could be prejudicial to the defendant. Furthermore, it is not improper for an attorney to state his belief that a witness is or is not entitled to credence. *People* v. *Wirth* (1896), 108 Mich 307.

The defendant contends that the trial court erred in refusing to give the following instruction to the jury.

"A reasonable doubt is any doubt in your minds for which you can assign a reason arising from the evidence you have heard or from the lack of evidence. It is the kind of doubt which would cause you to hesitate to act in the more important and serious affairs of your own lives. If you have such a doubt about the defendant's guilt, then you must find him not guilty."

Instead, the trial court gave the following instruction:

"Now, what do I mean by a reasonable doubt? In the general nature of things, it is rarely possible to prove anything to an absolute certainty. Proof beyond a reasonable doubt is established if the evidence is sufficient as you would be willing to rely and act upon in the most important of your own affairs. To put it another way, the people do not have to eliminate all of the doubt; that is that possibility that anything might happen. But the proofs presented by the people must eliminate any doubt based upon reason, any doubt which has a rational explanation. If in considering all of the evidence you find that you entertain a doubt, a fair

doubt, based upon reason and common sense about the establishment of any of the elements in the case, then you must give the benefit of that doubt to the defendant. In other words, if after considering all of the evidence, you do not have a doubt based upon reason, but you are convinced to a moral certainty that the guilt of the defendant has been established, the mere fact that there is a remote possibility that it couldn't be so is not the kind of doubt which acquits. The reasonable doubt may arise not only from the evidence but from a lack of evidence. In other words, a defendant has not a duty to present evidence to create doubt. The doubt might be created if in fact you find it from an absence of evidence by the people.

"The burden is upon the people to prove the accused guilty beyond a reasonable doubt of every essential element of the crime charged. And the defendant has a right to rely upon the failure of the people to establish the proofs if the people do not. The law does not impose upon the defendant the duty of producing any evidence. A reasonable doubt exists in any case when after careful and impartial consideration of all of the evidence, the jurors do not feel convinced to a moral certainty that the defendant is guilty of the charge".

The defendant contends the instruction given was erroneous because it defined reasonable doubt in terms of a doubt one would be willing to act upon instead of a doubt that would cause one to hesitate to act. In support of this contention he cites *Holland* v. *United States* (1954), 348 US 121 (75 S Ct 127, 99 L Ed 150). In *Holland,* the Supreme Court indicated a preference for the form of instruction favored by the defendant, but it also held that language similar to that used by the trial court would not mislead the jury and therefore was not erroneous.

It is a familiar principle, that when a trial court has given an instruction which in substance is the same as one it has refused to give, there is no error. *People* v. *Fred W. Thomas* (1967), 7 Mich App 519. To hold the trial court's instruction erroneous would be to seize upon a fine semantic nuance that would not affect the jury's understanding of the law. We decline to do so.

The defendant contends that it was error to instruct the jury that there is a presumption that a witness speaks the truth. A jury instruction must be read as a whole. *People* v. *Robinson* (1968), 11 Mich App 162. When the court's instruction is read in its entirety, it is clear that the jury was informed of a number of factors to be considered in determining a witness' credibility. The instruction on a presumption that a witness speaks the truth amounted to no more than saying that the jury should not start out with the assumption that a witness was lying. This was not error.

The defendant's final contention is that because of an alleged policy of the Detroit Recorder's Court of undercompensating assigned counsel, he was denied effective assistance of counsel. The record shows that the defendant's counsel was both diligent and competent and this contention has no merit.

Affirmed.

All concurred.