**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Henry REEVES,**
**Defendant-Appellant.**

**No. 78–5190.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 19, 1978.

Decided March 2, 1979.

Rehearing and Rehearing En Banc
denied April 23, 1979.

Donald N. Krosin, Deputy Federal Defender, Cleveland, Ohio, for defendant-appellant.

William T. Beyer, U. S. Atty., Nancy C. Schuster, Cleveland, Ohio, for plaintiff-appellee.

Before EDWARDS, Chief Judge, CELEBREZZE, Circuit Judge, and PECK, Senior Circuit Judge.

EDWARDS, Chief Judge.

Appellant seeks reversal of his conviction after jury trial on a charge of armed robbery of a bank, in violation of 18 U.S.C. § 2113(a) and (d) (1976).

This appeal presents two substantial questions: 1) whether items of clothing seized without warrant in a room occupied by appellant were illegally admitted into evidence over objection because the consent relied on was furnished by another occupant of the premises, and 2) whether the judge's charge on criminal intent was such as improperly to shift the burden of proving absence of guilt to the appellant.

On consideration of the whole record, we find that the articles of clothing were properly admitted at trial. As to the intent instruction, we hold that a portion of the instruction given was erroneous and should

538

not be employed. We also hold, however, that in this case the criminal intent of the person who robbed this bank was never placed at issue. Appellant's defense was simply that he was not the person who did it. This issue was clearly presented to the jury with the burden of proof beyond reasonable doubt placed squarely upon the government. More than adequate evidence to support the jury verdict was presented, including three eyewitness identifications, surveillance camera photographs and appellant's fingerprint and palm print left in the bank. Under these circumstances, we find the error in the charge to be harmless beyond reasonable doubt. Fed.R.Crim.P. 52(a).

■ Appellant's brief recites the events at the bank and the immediate aftermath as follows:

At about 1:30 p. m. on August 25, 1977, a branch of the Central National Bank at 6422 St. Clair Avenue, Cleveland, Ohio, was robbed by a lone black male. The robber handed a brown paper bag to a teller. He obtained $552.00 in cash, but left the bag behind. The robber was seen entering an automobile parked in front of the bank. The license plate number of the automobile was noted by a witness.

The license plate was traced to one Elizah Patterson, a resident in a large apartment building. Agents tried, without success to find Mr. Patterson. On August 26, 1977, Mr. Patterson contacted the agents and was shown a surveillance photograph which he said was "John", a tenant in the building in which he lived.

On August 26, 1977, as a result of this information, the agents proceeded to place under arrest a man named Joseph De Jarnett. Mr. De Jarnette was arrested and taken to FBI headquarters, agents remained at Mr. De Jarnette's suite. They continued to interview Mr. De Jarnette's young daughter and a woman identified only as "Antoinette." Up to that point, the Appellant was not a suspect in this case. The agents were told by the little girl that she had seen the tenant across the hall, named "John", en-

ter Mr. Patterson's automobile. This information was relayed to the case agent. Verbal authorization was then given by Assistant United States Attorney, John Berena for the arrest of the Appellant. No arrest warrant was ever applied for or issued by any judge or magistrate.

Agents around the premises of the apartment building saw an automobile enter a parking lot across the street from the apartment building. Two men got out of the automobile and, subsequently, transferred to another automobile and drove out of the lot. Agents in several automobiles followed the two men and stopped them some distance away. The Appellant was arrested and taken to FBI headquarters. The other man, Stanley Baker, was found to be an occupant of Appellant's suite in the apartment building. Mr. Baker was taken back to the suite by several agents. He accompanied the agents while a search was made and various items were seized, including some from Appellant's bedroom.

Appellant was subsequently charged with a violation of Title 18, § 2113(a), (d), U.S.C.

The only fact which needs to be added to those recited above to warrant our rejecting appellant's first stated issue (a claim of illegal arrest) is that one of the officers who arrested appellant as he was leaving in a car recognized him from the bank surveillance photos. The sum total of the facts contained in the record we view as establishing ample probable cause for the arrest of appellant at the time and place concerned. Thus, we find no need to analyze whether or not appellant's arrest played any role in the subsequent alleged illegal search and seizure to which we turn now.

### THE CLAIM OF ILLEGAL SEARCH AND SEIZURE

■ The driver of the automobile in which appellant was arrested was Stanley Taylor. Mr. Taylor took two FBI Agents into "his" apartment and then took Agent Lyford into a room in which he later told Lyford appellant stayed. There Lyford saw

a blue jean suit similar to that worn by the bank bandit, as shown on the surveillance photos. He seized the two-piece blue jean suit and over appellant's vigorous objection that he had not consented, it was received at the trial. This court, and the Supreme Court of the United States, have made it clear that voluntary consent to search by a joint owner or occupant having joint control can be a valid basis for lawful seizure of evidence. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *Coolidge v. New Hampshire*, 403 U.S. 443, 466–71, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Kirvelaitis v. Gray*, 513 F.2d 213, 215 (6th Cir.), *cert. denied*, 423 U.S. 855, 96 S.Ct. 103, 46 L.Ed.2d 80 (1975).

In *Matlock* the Supreme Court said:

[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.[7] * * *

[7] Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, see *Chapman v. United States*, 365 U.S. 610, [81 S.Ct. 776, 5 L.Ed.2d 828] (1961) (landlord could not validly consent to the search of a house he had rented to another, *Stoner v. California*, 376 U.S. 483, [84 S.Ct. 889, 11 L.Ed.2d 856] (1964) (night hotel clerk could not validly consent to search of customer's room) but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched. *United States v. Matlock, supra*, 415 U.S. at 171 and n. 7, 94 S.Ct. at 993 and n. 7.

The District Judge, relying upon *Matlock*, admitted the suit into evidence on the basis of the following summary of the evidence:

Subsequent to the arrest of the defendant at East 79th and Hough, Special Agents Hultgen and Lyford interviewed the driver of the white Grand Prix Stanley Taylor. Taylor suggested that the interview continue at his apartment at 9410 Hough Avenue, Apartment 10G. Upon arrival at the apartment, Hultgen proceeded to interview a young Negro male who was preparing dinner in the kitchen, while Taylor directed Lyford to a bedroom where the interview commenced. During the interview Lyford observed in plain view a pair of blue denim trousers with a belt laying on a dresser and a blue denim jacket hanging in plain view in the bedroom closet. Thereafter Taylor, upon further inquiry by Lyford, stated that the trousers and jacket were the property of Reeves.

* * * * * *

The evidence disclosed that Taylor and Reeves were joint tenants of suite 10G; that the door to the bedroom in question was open; and that access thereto was not impaired by any obstructions. Moreover, the items of clothing were in plain view.

We believe that the District Judge's reliance upon *Matlock* was appropriate under the facts of this case.

We also have reviewed appellant's claim that other evidence seized in this apartment under a subsequently procured search warrant was improperly received in evidence and find no merit to the claim.

## THE DISTRICT JUDGE'S INSTRUCTION ON INTENT

■ The last issue of significance is appellant's claim that the District Judge gave instruction which improperly shifted the burden of proof to appellant. In part the District Judge charged:

Intent is the purpose or aim or state of mind with which a person acts or fails to act:

It is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted. *So in the absence of evidence in the case which leads the jury to a different or contrary conclusion,*

you may draw the inference and find that the accused intended such natural and probable consequences which one standing in like circumstances and possessing like knowledge should reasonably expect to result from any acts knowingly done or knowingly omitted by such person.

As I have stated, an act or failure to act is knowingly done if done voluntarily and intentionally and not because of mistake or accident or other innocent reason. (Emphasis added).

This charge has some authority to support it. (*See Sherwin v. United States*, 320 F.2d 137 (9th Cir. 1963), *cert. denied*, 375 U.S. 964, 84 S.Ct. 481, 11 L.Ed.2d 420 (1964)). We believe, however, that the underlined portion does have a burden-shifting tendency and should not be used in the future in this Circuit. Our review of the debate which has raged concerning this charge leaves us convinced that the authority cited against the charge is the better reasoned.

In 1963, the Fifth Circuit rejected a similar burden-shifting charge in *Mann v. United States*, where the court said:

When the words, "So unless the contrary appears from the evidence" were introduced, the burden of proof was thereupon shifted from the prosecution to the defendant to prove lack of intent. If an inference from a fact or set of facts must be overcome with opposing evidence, then the inference becomes a presumption and places a burden on the accused to overcome that presumption. Such a burden is especially harmful when a person is required to overcome a presumption as to anything subjective, such as intent or wilfulness, and a barrier almost impossible to hurdle results.

*Mann v. United States*, 319 F.2d 404, 409 (5th Cir. 1963), *cert. denied*, 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1964).

The following year this Circuit spoke to the same issue:

This instruction has been recently and vigorously criticized by the Fifth Circuit, *Mann v. United States*, 319 F.2d 404 (C.A.5, 1963), cert. denied 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1964). It has also more recently been held by the Ninth Circuit not to constitute prejudicial error under the whole instruction on intent therein given. *Sherwin·v. United States*, 320 F.2d 137 (C.A.9, 1963), cert. denied 375 U.S. 964, 84 S.Ct. 481, 11 L.Ed.2d 420, rehearing denied 376 U.S. 946, 84 S.Ct. 796, 11 L.Ed.2d 771 (1964). We feel that the second sentence of the instruction quoted above is at best clumsy and, if taken alone, confusing. On this record, however, and under a total instruction on intent very similar to that in the *Sherwin* case, we do not think the error affected any "substantial right" of defendant.

*United States v. Denton*, 336 F.2d 785, 788 (6th Cir. 1964).

The same sort of instruction was criticized again by this court in *United States v. Cooper*, 577 F.2d 1079, 1081–83 (6th Cir. 1978).

The Second Circuit has also criticized and rejected the *Mann*-type charge:

Despite its ancient vintage, see *Agnew v. United States*, 165 U.S. 36, 53, 17 S.Ct. 235, 41 L.Ed. 624 (1897), utterance of the quoted platitude serves no useful purpose, since insofar as the statement has logical validity the jury would know it anyhow; more important, in a bribery case it creates a serious risk that the jury might think the Government's burden of showing the required specific intent could be met by proof of payment alone "unless the contrary appears from the evidence" —presumably evidence the defense would have to present. Many courts of appeals have looked askance on such an instruction in criminal trials, and some decisions have reversed because of its use, *Bloch v. United States*, 221 F.2d 786, 788–789 (9 Cir. 1955); *Chappell v. United States*, 270 F.2d 274, 279 (9 Cir. 1959); *Mann v. United States*, 319 F.2d 404, 407–410 (5 Cir. 1963), cert. denied, 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1964).

*United States v. Barash*, 365 F.2d 395, 402–03 (2d Cir. 1966), *affirmed following remand on other grounds*, 412 F.2d 26 (2d Cir.), *cert. denied*, 396 U.S. 832, [90 S.Ct. 86, 24 L.Ed.2d 82] (1969).

More recently, the Second Circuit reversed a criminal conviction, stating:

> Thus, the "natural and probable consequences" charge, particularly when, as here, it contains the phrase "unless the contrary appears from the evidence," is a burden-shifting charge which has the potential for misleading the jury with respect to the requirement that the government must prove every element of an offense beyond a reasonable doubt. *United States v. Barash*, 365 F.2d 395, 402–03 (2d Cir. 1966) (Friendly, J.); *see United States v. Erb*, 543 F.2d 438, 447 (2d Cir. 1976).
>
> *United States v. Robinson*, 545 F.2d 301, 306 (2d Cir. 1976).

This past year the Fifth Circuit en banc held prospectively that no burden-shifting charge should be employed, even if balanced by proper instructions placing the burden of proof on the prosecution. *United States v. Chiantese*, 560 F.2d 1244, 1255–56 (5th Cir. 1977) (en banc). *See also United States v. Garrett*, 574 F.2d 778, 782–83 (3d Cir.), *cert. denied*, 436 U.S. 919, 98 S.Ct. 2265, 56 L.Ed.2d 759 (1978); *United States v. Littlebear*, 531 F.2d 896, 898 (8th Cir. 1976); *United States v. Eaglin*, 571 F.2d 1069, 1075–76 (9th Cir. 1977) (en banc); *United States v. Woodring*, 464 F.2d 1248, 1251 (10th Cir. 1972).

It is also important to note that a wholly appropriate charge containing a definition of intent without any burden-shifting implication, is readily available in 1 Devitt & Blackmar, Federal Jury Practice and Instructions (3d ed. 1977) as follows:

**§ 14.13 Proof of Intent**

Intent ordinarily may not be proved directly, because there is no way of fathoming or scrutinizing the operations of the human mind. But you may infer the defendant's intent from the surrounding circumstances. You may consider any statement made [1] by the defendant, and all other facts and circumstances in evidence which indicate his state of mind.

You may consider it reasonable to draw the inference and find that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. As I have said, it is entirely up to you to decide what facts to find from the evidence.

*Id.* at § 14.13 (footnote added).

In future trials where such a charge is appropriate, this Circuit will approve language similar to that set forth above—provided, of course, that the charge also contains language clearly placing upon the prosecution the burden of proof beyond reasonable doubt of all essential elements of the crime.

Although we consider that the phrase objected to by appellant in this case was employed erroneously, as we pointed out at the beginning of this opinion, it was harmless beyond reasonable doubt in the context of this case. The intentions of the bank bandit were not in dispute. The sole jury issue was whether or not appellant was the robber and the jury, on the evidence reviewed above, decided he was.

The judgment of conviction is affirmed.