**Arthur Jackson BURTON, Petitioner-Appellant,**

v.

**Jack BERGMAN, Respondent-Appellee.**

No. 80–1497.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 18, 1980.

Decided May 21, 1981.

Rehearing and Rehearing En Banc Denied July 20, 1981.

Arthur Jackson Burton, pro se.

Kathleen King, Chase Law School, Covington, Ky., for petitioner-appellant.

Frank J. Kelley, Atty. Gen., Robert A. Derengoski, Sol. Gen., Thomas L. Casey, Asst. Atty. Gen., Lansing, Mich., for respondent-appellee.

Before WEICK and BOYCE F. MARTIN, Circuit Judges, and NIXON, District Judge.*

* Honorable John T. Nixon, United States District Judge for the Middle District of Tennessee, sitting by designation.

BOYCE F. MARTIN, Jr., Circuit Judge.

Arthur Jackson Burton appeals the District Court's denial of his petition for a writ of habeas corpus. He was convicted in a Michigan state court of assault with intent to commit murder, and sentenced to life imprisonment. He appealed his conviction to the Michigan Court of Appeals, contending that the trial judge's jury instructions were faulty. The conviction was affirmed, and the Michigan Supreme Court denied leave to appeal.

In his petition for habeas relief, Burton alleges 1) that the trial court's instructions to the jury deprived him of due process of law, and 2) that he was denied effective assistance of counsel. The District Court dismissed the first contention on the merits, and refused to entertain the ineffective assistance claim on the ground that petitioner had failed to exhaust his state remedies as required by 28 U.S.C. §§ 2254(b) and (c).

In 1975, petitioner was convicted of assaulting with intent to murder Debra Boulley, his former girlfriend and the mother of their three-year-old daughter. Ms. Boulley gave the following account of the incident in her testimony at trial: Burton tricked her into admitting him into the house where she and their daughter were staying. He then held a gun to Ms. Boulley's head. He stated that he was not going to hurt her but that he wanted to discuss her reasons for refusing to see him. She replied that there was no reason for them to see one another. Petitioner removed the bullets from the gun to demonstrate that he was not going to hurt her. Ms. Boulley then attempted to secure herself and her child in the bathroom, but Burton pushed the door open. He stabbed her repeatedly with a pen knife, ransacked the house, and returned to the bathroom to stab Ms. Boulley several more times. In all, petitioner stabbed her approximately forty times in the neck, chest, arms, and back. Finally, he threatened to kill her and their daughter if she informed the police that he was the

assailant. In May of 1974, six months after the assault, Ms. Boulley finally told the police that it was petitioner who assaulted her.

Burton did not testify at his trial. The theory of the defense was that the prosecution had failed to prove its case beyond a reasonable doubt.

Petitioner contends that the instructions the trial judge gave to the jury deprived him of his right to due process of law. He cites three segments of the court's charge which, he argues, constitute reversible error. The first relates to the element of intent. The court instructed the jury that it could find petitioner guilty of assault with intent to commit murder, guilty of the lesser included offense of assault with intent to do great bodily harm, or not guilty. With respect to the element of intent, the court gave the following instruction:

> Now I have given you some illustrations. I hope you remember those. That if a person say pointed a gun at a man's toe and shot him, that would be one thing, but if the person pointed the gun at somebody's head and fired on him and later on said well I didn't intend to kill him, I just intended to hurt him, you see *the law presumes that any ordinary human being intends the ordinary consequences of his or her acts.* You couldn't

run back and say, oh, well, I didn't intend it to go that far, when you pointed it or you actually fired on somebody at a vital—at a portion of that person's body. Record at 385–6 (emphasis added).

Petitioner claims that this instruction deprived him of his constitutional right under *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) not to be convicted except upon proof beyond a reasonable doubt of every element of the crime. Respondent contends that the court's comments about presuming intent pertained only to the illustration of a person shooting someone in the head. He further argues that the effect of the instruction was merely to inform the jury that it could infer the element of intent from the facts and circumstances of the case. This was the view adopted by the District Court in its opinion dismissing the petition. We disagree, and hold that the use of the instruction was constitutional error.[1]

■ It is true, as respondent argues, that the evidence adduced at trial permits an inference that petitioner assaulted Ms. Boulley with the intent to murder her. It is also true that a jury may properly be instructed that it may infer intent from the circumstances or that it may infer that a person intends the ordinary consequences of

1. The dissent notes that there was no objection made at trial to the challenged jury instructions. It thus suggests that *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), precludes federal habeas corpus review, an argument not raised here by respondent. However, procedural default only bars habeas relief if the state court relies on the procedural default in affirming the conviction. *County Court of Ulster County v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). The memorandum opinion of the Michigan Court of Appeals stated in its entirety:

> Defendant was convicted by a jury of assault with intent to kill and murder, contrary to MCLA 750.83; MSA 28.278. Defendant was sentenced on the offense and now appeals alleging various errors in the trial court's jury charge.
> *An examination of the record discloses no reversible error. Defendant was not deprived of a substantial right. People v. Smith,* 68 Mich.App. 138, 140, 242 N.W.2d 42 (1976), *People v. Auer,* 393 Mich. 667, 227

N.W.2d 528 (1975), *People v. Smalls,* 61 Mich.App. 53, 232 N.W.2d 298 (1975), *People v. Jordan,* 51 Mich.App. 710, 216 N.W.2d 71 (1974), *People v. Adams,* 48 Mich.App. 595, 601, 210 N.W.2d 888 (1973), *People v. Poe,* 27 Mich.App. 422, 183 N.W.2d 628 (1970), *People v. Finley,* 38 Mich. 482 (1878).
> Affirmed.

(emphasis added). It is true that some of the cases cited by the opinion are procedural waiver cases, thus indicating that the appellate court may have been "thinking in procedural terms." *Brown v. Reid,* 493 F.Supp. 101, 103 (S.D.N.Y.1980). However, we find it significant that the language of the opinion so clearly relies on an adverse determination of the merits of petitioner's claim. We express no view on what effect a clear state court reliance on non-compliance would have upon us. We hold only that no such ground of decision is unambiguously set forth in this record, and therefore we do no violence to the principles of federalism underlying *Wainwright* by deciding the merits of the federal claim.

his acts. *See, e. g., Krzeminski v. Perini,* 614 F.2d 121, 124 n.4 (6th Cir.), *cert. denied,* —— U.S. ——, 101 S.Ct. 199, 66 L.Ed.2d 84 (1980). *See also Sandstrom v. Montana,* 442 U.S. 510, 527, 99 S.Ct. 2450, 2461, 61 L.Ed.2d 39 (1979) (Rehnquist, J., concurring).

In this case, however, the trial court instructed the jury that the law *presumes* that a person intends the ordinary consequences of his acts.[2] There was no qualifying instruction concerning the legal effect of the presumption. *See Sandstrom, supra,* at 517, 99 S.Ct. at 2456.[3] It is possible that a reasonable jury might have interpreted the instruction in one of two ways: either as a direction to find against petitioner on the element of intent upon proof of his voluntary actions and their "ordinary" consequences; or as a direction to find against petitioner upon proof of voluntariness unless the defendant made a showing to the contrary. Either interpretation would have deprived petitioner of due process of law. *Id.* at 517–18, 524, 99 S.Ct. at 2459. *See also United States v. Reeves,* 594 F.2d 536 (6th Cir.), *cert. denied,* 442 U.S. 946, 99 S.Ct. 2893, 61 L.Ed.2d 317 (1979), where we specifically recommended a definition of intent which, in our view, did not contain any burden shifting implications; and *United States v. Bohlmann,* 625 F.2d 751 (6th Cir. 1980).

We do not, by following *Sandstrom,* reject the rule that a challenged instruction "may not be viewed in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973). Rather, we believe that the trial court's instruction created a substantial risk that the jury would believe the presumption provided the necessary proof of petitioner's intent beyond a reasonable doubt.

Respondent contends that even if the instruction was erroneous, the error was harmless. We are, of course, bound by the standard announced in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967): "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828. We must grant the petition if we find that there is a reasonable possibility that the challenged instruction might have contributed to the conviction. *Id.*

When the evidence of guilt properly admitted at trial is overwhelming, an error of constitutional dimension may be deemed harmless. *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Mitchell v. Engle,* 634 F.2d 353 (6th Cir. 1980). The evidence in this case of petitioner's intent to murder includes: the number and location of the stabbings, petitioner's statements to Ms. Boulley at the time of the incident that he would choke her, and the repeated subsequent threats upon her life and the life of their child.

**2.** The dissent suggests that the use of the word "presume" instead of the word "infer" should not have such drastic consequences. In response we need only quote from Justice Rehnquist's concurring opinion in *Sandstrom, supra,* 442 U.S. at 528, 99 S.Ct. at 2461:

> While I continue to have doubts as to whether this particular jury was so attentively attuned to the instructions of the trial court that it divined the difference recognized by lawyers between "infer" and "presume," I defer to the judgment of the majority of the Court that this difference in meaning may have been critical in its effect on the jury. I therefore concur in the Court's opinion and judgment.

**3.** We hold that the rule in *Sandstrom* must be applied retroactively. We are not certain that

*Sandstrom* announces a new constitutional principle; it seems to be simply an application of the principle established by *Winship. See Lee v. Missouri,* 439 U.S. 461, 462, 99 S.Ct. 710, 711, 58 L.Ed.2d 736 (1979). However, even if *Sandstrom* articulates a new rule, the major purpose of the rule is to overcome an aspect of the trial that substantially impairs its truth finding function and raises serious questions about the accuracy of guilty verdicts in past trials. For that reason the rule must be applied retroactively. *Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977). *See also Washington v. Harris,* 502 F.Supp. 1267, 1273 n.8 (S.D.N.Y.1980). *Contra, United States v. Spiegel,* 604 F.2d 961 (5th Cir. 1979), *cert. denied,* 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980).

Nevertheless, the inference that petitioner intended to murder Ms. Boulley when he assaulted her is by no means inescapable. According to Ms. Boulley, she and petitioner were "going together" from the end of 1968 until 1973. In 1970, she gave birth to their child. There was evidence in a letter admitted as a state's exhibit that petitioner's threats towards Ms. Boulley were intended only to frighten her so that she would visit him. There was further evidence that at the time of the assault and afterward petitioner wanted to resume his previous relationship with Ms. Boulley. Under these circumstances, we cannot conclude that the evidence of petitioner's intent to murder was so overwhelming as to render the erroneous instruction harmless.

Respondent, citing our decision in *Reeves, supra,* contends that any error in the instruction on intent was harmless because petitioner's intent was never placed in issue. We strenuously disagree with the premise of this argument and with respondent's interpretation of *Reeves.*[4] In a criminal case, every element of the crime charged is necessarily placed in issue: "Lest there remain any doubt about the constitutional stature of the reasonable doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship, supra,* 397 U.S. at 364, 90 S.Ct. at 1072. In our view, the erroneous instruction may have relieved the state of its obligation to prove the requisite intent beyond a reasonable doubt. If the trial court had refrained from giving the improper instruction, the jury might have entertained a reasonable doubt that petitioner assaulted Ms. Boulley with the intent to murder her. Such an error cannot be harmless. *Cf. United States v. Boyd,* 620 F.2d 129 (6th Cir.), *cert. denied,* —— U.S. ——, 101 S.Ct. 151, 66 L.Ed.2d 69 (1980).

In light of our decision on this issue, we need not address petitioner's other contentions.

The judgment of the District Court is reversed, and the case is remanded for the issuance of a writ in the customary form which allows the state to retry Burton within a reasonable period of time in lieu of releasing him outright.

WEICK, Circuit Judge, dissenting:

I respectfully dissent. Because of a single word in comprehensive unobjected to jury instructions, where the court used the word "presume" instead of "infer" the state court conviction of the defendant of assault with intent to commit murder is collaterally attacked and set aside by the majority. The conviction had been affirmed by the Michigan Court of Appeals and leave to appeal was denied by the Supreme Court of Michigan. Habeas relief was denied by a district judge knowledgeable of Michigan law, by long experience, who found no prejudicial error in the instructions.

It is the well established rule that even in a direct appeal from a conviction which is attacked on the ground of an alleged erroneous instruction, that all of the instructions and not one single instruction or word

---

4. In that case the appellant sought reversal of his federal conviction of armed bank robbery. We held that a burden shifting instruction concerning the element of intent was error. However, we observed that

> [I]n this case the criminal intent of the person who robbed the bank was never placed at issue. Appellant's defense was simply that he was not the person who did it. This issue was clearly presented to the jury with the burden of proof beyond reasonable doubt placed squarely on the government. More than adequate evidence to support the jury verdict was presented .... Under these circumstances, we find the error in the charge

to be harmless beyond a reasonable doubt. 594 F.2d at 538.

In *Reeves,* the evidence presented at trial and the appellant's defense indicated that the element of intent was not a critical question. In that sense, it was not placed in issue. It still, of course, had to be proven beyond a reasonable doubt. Our point was simply that the circumstances of that case—the absence of conflicting evidence regarding the appellant's intent—were more conducive to a finding of harmless error than circumstances in which intent became a critical issue at trial. In the present case, the record suggests that the issue of petitioner's intent was crucial.

must be considered in determining the issue. *Cupp v. Naughten*, 414 U.S. 141, 146, 147, 94 S.Ct. 396, 400, 401, 38 L.Ed.2d 368 (1973). When this rule is correctly applied, as did the district judge, it will be seen that no prejudicial error occurred.

Previous to the instruction now objected to, the court had charged the jury on the subject of intent as follows:

So how do you determine a person's intent? And it states right here. You may infer from what is said and what is done. Now that's a sure-fire proposition. You take into consideration what the person says, and what the person does, and you ought to be able to determine what his intent is.

For instance, if I had a gun—you will have to excuse me—Mr. Wyse [the prosecuting attorney], you're the object today—and I pointed it at his toe and I actually shot him in the toe. I would think that would indicate that I intended to hurt him but not to kill him.

Now let's say I took that gun and I aimed it at his head and I pulled that trigger. Now I think the intent there would be to kill him, to get rid of him. And that's what I mean by considering the acts and the words of a person in determining what that person intends to do.

The court gave correct instructions on the offense of assault with intent to commit murder, presumption of innocence, reasonable doubt, and on the lesser included offense of assault with intent to commit bodily injury.

After the court instructed the jury, the record discloses the following:

THE COURT: Wait a minute. Are there any objections to the court's charge?

MR. MOLETTE: No, your honor.

THE COURT: All right.

MR. WYSE: No objections, your honor.

THE COURT: All right. Thank you.

Thus, both counsel stated to the court that they had no objection to the instructions. Had objection been made, the court would then have had an opportunity to rule on the objection and correct the instruction if it was erroneous.

Michigan applies the contemporaneous objection rule. *People v. Townes*, 391 Mich. 578, 218 N.W.2d 136 (1974). This is also the federal rule. Rule 30, Fed.R.Crim.P. Under both rules, however, because of the supervisory jurisdiction of the reviewing courts, manifest and serious errors may be considered even not objected to. No such error existed in the present case.

The majority opinion graphically relates the heinous crime committed by the defendant as follows:

Ms. Boulley gave the following account of the incident in her testimony at trial: Burton tricked her into admitting him in to the house where she and their daughter were staying. He then held a gun to Ms. Boulley's head. He stated that he was not going to hurt her but that he wanted to discuss her reasons for refusing to see him. She replied that there was no reason for them to see one another. Petitioner removed the bullets from the gun to demonstrate that he was not going to hurt her. Ms. Boulley then attempted to secure herself and her child in the bathroom, but Burton pushed the door open. He stabbed her repeatedly with a pen knife, ransacked the house, and returned to the bathroom to stab Ms. Boulley several more times. In all, petitioner stabbed her approximately forty times in the neck, chest, arms and back. Finally, he threatened to kill her and their daughter if she informed the police that he was the assailant.

This evidence was not seriously controverted. After seriously injuring and maiming her by the repeated stabbings, Burton declined to even call an ambulance to take her to the hospital until she took an oath not to tell the police. When she was taken to the hospital, she was placed in intensive care suffering from the mutilation of her body.

At the trial in the state court, the defendant did not even take the witness stand to deny the stabbings. He questioned the sufficiency of the evidence, but this was for the state courts and not for us to decide in a

habeas proceeding. The verdict of the jury was supported by overwhelming uncontroverted evidence as was held by the state courts as well as by the district judge. Even if a small part of the state judge's instructions to the jury was erroneous, the error was harmless beyond a reasonable doubt and we should so hold. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The district court was correct in ruling that appellant had not exhausted his state remedies with respect to his belated contention made for the first time in the federal court that he did not have effective assistance of counsel.

We should follow the principles of federalism and not collaterally attack the factual determinations of state courts in criminal proceedings where there is some evidence to support them as was held by the district court. The judgment of the district court denying the writ of habeas corpus should be affirmed.