OPINION
{¶ 1} David Purkhiser was indicted on two counts of sexual battery and five counts of pandering obscenity involving a minor. The trial court overruled his motions to sever the counts for trial and to suppress evidence taken from his home. Purkhiser entered a no contest plea pursuant to North Carolina v. Alford
(1970), 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162, and the trial court found him guilty of these offenses. Purkhiser was sentenced to three years of imprisonment on each of the sexual batteries and to nine months on each of the pandering counts, all to be served concurrently. He appeals from the denial of his pre-trial motions and his sentence.
 {¶ 2} The state's version of events is as follows.
 {¶ 3} All of the alleged offenses occurred at 327 Wood Street in Piqua, where Purkhiser lived with his deceased fiancee's daughter, the victim. Between October 2003 and September 2004, Purkhiser engaged in cunnilingus with the victim while she was 13 and 14 years old. The victim reported this behavior to her father and step-mother, who reported it to the police, and an investigation began. The police interviewed numerous people during the course of their investigation, including Orville and Lynn Fultz, who shared a duplex with Purkhiser, and Purkhiser's roommate, Karl Kash. Following their interviews with the police, Orville Fultz and Kash brought various forms of pornography to the police that they had obtained from Purkhiser's computer and from the yard behind the duplex. The information obtained from the computer formed the basis for the pandering charges.
 {¶ 4} After the trial court overruled Purkhiser's motions to sever and to suppress, he entered an Alford plea, in exchange for which the state recommended an eighteen-month sentence. The trial court found him guilty on all counts and sentenced him as described supra.
 {¶ 5} Purkhiser raises four assignments of error on appeal.
 {¶ 6} I. "THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION TO SEVER IN VIOLATION OF R.C. SECTION 2941.04."
 {¶ 7} Purkhiser asserts that he did not receive a fair trial because the trial court refused to sever the sexual battery counts from the pandering counts with which he was charged. He claims that presenting the evidence on all counts caused the jury to have an "unfavorable impression" or "hostility" toward him.
 {¶ 8} The law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged are of the same or similar character. State v. Lott (1990), 51 Ohio St.3d 160,163, 555 N.E.2d 293; State v. Torres (1981), 66 Ohio St.2d 340,343, 421 N.E.2d 1288. When a defendant challenges a court's refusal to allow separate trials of multiple charges, he has the burden of affirmatively showing that his rights were prejudiced.Torres, 66 Ohio St.2d at 343. Where evidence is direct and uncomplicated, the general presumption is that the jury is capable of segregating the proof on each charge. State v.Brooks (1989), 44 Ohio St.3d 185, 194, 542 N.E.2d 636. A trial court's decision denying severance will only be reversed if the trial court abused its discretion. Lott, 51 Ohio St.3d at 163.
 {¶ 9} The trial court found that joinder was proper because both types of offenses involved minors and all of the offenses occurred at the same address. It also concluded that the evidence would not be confusing or difficult for jurors to separate. The record supports these conclusions. Purkhiser was charged with two counts of cunnilingus with the victim, which occurred between October 2003 and September 2004, and with five counts involving possession of obscene materials on February 2, 2005. Although the victim of the sexual battery was depicted in some of the pictures found on Purkhiser's computer, the trial court could have reasonably concluded that the jury would have no trouble segregating the evidence involving sexual contact from the evidence involving the possession of pictures. As such, the trial court properly denied the motion to sever.
 {¶ 10} The first assignment of error is overruled.
 {¶ 11} II. "THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS."
 {¶ 12} Purkhiser claims that the evidence taken from his home by his neighbor and his roommate should have been suppressed because they were acting as agents for the police.
 {¶ 13} Ohio courts have held for many years that "[t]he constitutional right against unreasonable searches and seizures applies only to actions by the government and its officers and not to acts of private individuals." State v. McDaniel (1975),44 Ohio App.2d 163, 171, 337 N.E.2d 173. See, also, Burdeau v.McDowell (1921), 256 U.S. 465, 475, 41 S.Ct. 574,65 L.Ed.2d 1048; Coolidge v. New Hampshire (1971), 403 U.S. 443, 487,91 S.Ct. 2002, 29 L.Ed.2d 564. As a result, even if a private person conducts an illegal search, the evidence will not be barred by the exclusionary rule. McDaniel at 171-172. If a private party acts as a government agent, the protection against unlawful searches and seizures may apply. See, e.g., State v. Morris
(1975), 42 Ohio St.2d 307, 316, 329 N.E.2d 85, citing Burdeau,256 U.S. 465. The test of government participation is whether, in light of all the circumstances, the private person acted as an instrument or agent of the state. Coolidge, 403 U.S. at 487. "The cases in this area require a great deal of entanglement between the police and the private searcher before agency can be found." State v. Jedd (2001), 146 Ohio App.3d 167, 172,765 N.E.2d 880, citing State v. Byerly (Aug. 21, 1998), Portage App. No. 97-P-0034.
 {¶ 14} In the present case, Purkhiser's neighbor and his roommate turned over two sets of evidence to Taylor: a trash bag of adult pornography and sexual paraphernalia that was retrieved from the neighbor's disabled car in the backyard of the property, and disks from Purkhiser's computer containing the photographs that are the basis for the pandering charges.
 {¶ 15} When Officer Taylor interviewed Orville Fultz, Fultz reported that he had seen Purkhiser carry a trash bag out of his house and stash it in Fultz's disabled car in the backyard shortly after the victim had moved out of the house. Taylor asked if Fultz had looked in the bag, and Fultz replied that he had not. Taylor then "suggested to [Fultz] that if someone puts something in my car I'd want to know what was in it," but he did not pursue the matter further. Following this conversation, Fultz retrieved the bag and brought it to Taylor unopened. Taylor found a "sizeable amount of adult pornography," lingerie, and other items of a sexual nature in the bag, but nothing that was illegal.
 {¶ 16} When Purkhiser's roommate, Karl Kash, was interviewed by Taylor, he stated that he had observed inappropriate behavior between Purkhiser and the victim, but that he had not seen any pornography. He further explained that the men each had their own computer in the dining room of the duplex, but that they had access to one another's computers. Later that day, Kash called Taylor to report that he had found child pornography on disks near Purkhiser's computer. Kash claimed to have discovered the disks and become curious about their content while looking for a computer game near Purkhiser's computer. Kash delivered the disks to Taylor.
 {¶ 17} At the suppression hearing, Taylor denied that he had enlisted Fultz's or Kash's help in obtaining evidence from Purkhiser's home. According to Taylor, he suggested that Fultz might want to know what was in his car, but he did not ask or instruct Fultz to retrieve the bag. Similarly, Taylor denied telling Fultz or Kash to look for any evidence on or around Purkhiser's computer or computer desk. Taylor's account suggests that the men took these steps on their own initiative, and Purkhiser did not present any evidence to refute Taylor's account.
 {¶ 18} The trial court found that Taylor had not enlisted "Kash, Fultz, or anyone else to seize anything on his behalf nor * * * to do anything on his behalf, which would be tantamount to a search. * * * Although the two citizens appear to have taken the concept of sleuthing quite eagerly, the Court does not find they did so at the direction of the police, nor did the police have knowledge of Kash's search before it occurred." The evidence fully supported this conclusion, and the motion was properly overruled.
 {¶ 19} We further note that Purkhiser's argument related to the trash bag is misguided. The bag did not contain any incriminating material and, although mentioned in Taylor's affidavit in support of the search warrant, the reference was insignificant in view of the other evidence offered in support of the warrant. More importantly, Purkhiser had no reasonable expectation of privacy in the vehicle in which he had stashed the trash bag. Although defense counsel got Taylor to state at the suppression hearing that he had "had no legal ability to go on the Defendant's property" to look for the trash bag at the time that Fultz retrieved it, we are of the view that, with Fultz's consent, such a search would have been entirely permissible. In addition to Fultz's ownership of the car, he apparently had joint control over the area to be searched, i.e., the yard, and thus could have validly consented to such a search. See United Statesv. Matlock (1974), 415 U.S. 164, 169-170, 94 S.Ct. 988,39 L.Ed. 2d 242; State v. Reeves (1979), 594 F.2d 536.
 {¶ 20} The second assignment of error is overruled.
 {¶ 21} The third and fourth assignments relate to sentencing, and we will discuss them together.
 {¶ 22} III. "THE TRIAL COURT ERRED BY FAILING TO CONSIDER ALL PERTINENT SENTENCING FACTORS AND BY FAILING TO IMPOSE THE MINIMUM SENTENCE.
 {¶ 23} IV. "THE TRIAL COURT ERRED BY IMPOSING [A] NON-MINIMUM SENTENCE CONTRARY TO THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND THE AUTHORITY CONTAINED IN BLAKELY V. WASHINGTON AND UNITED STATES V. BOOKER."
 {¶ 24} Purkhiser claims that the trial court made insufficient findings to support a non-minimum sentence, citing R.C. 2929.12, R.C. 2929.13, and R.C. 2929.14. He also challenges the constitutionality of Ohio's sentencing scheme insofar as it permits the trial court to rely on factors not found by a jury.
 {¶ 25} The Supreme Court of Ohio recently held that parts of Ohio's felony sentencing scheme are unconstitutional, including R.C. 2929.14(B), which applied to Purkhiser's sentencing. Statev. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 245 N.E.2d 470, following Apprendi v. New Jersey (2000), 530 U.S. 466,120 S.Ct. 2348, 147 L.Ed.2d 435, and Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403. The supreme court concluded that non-minimum sentences imposed under R.C.2929.14(B) are unconstitutional because the statute "require[s] judicial factfinding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant." Foster at ¶ 83. Accordingly, the supreme court severed the provisions that it found to be unconstitutional, including R.C. 2929.14(B). Id. at ¶ 97, ¶ 99. Foster further instructed that all cases pending on direct review in which the unconstitutional sentencing provisions were utilized must be remanded for resentencing. Id. at ¶ 104. At resentencing, the trial court will have full discretion to impose a prison sentence within the statutory range and is no longer required to make findings or to give its reasons for imposing non-minimum sentences on an offender who has never served a prison term. Id.;State v. Mathis, 109 Ohio St.3d 54, 2006-Ohio-855,846 N.E.2d 1, ¶ 26.
 {¶ 26} The third and fourth assignments of error are sustained.
 {¶ 27} Purkhiser's sentence is reversed, and this matter will be remanded for resentencing. In all other respects, the judgment of the trial court will be affirmed.
Grady, P.J. and Fain, J., concur.